HEEREN COMPANY, Plaintiff-Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Defendants-Appellees.

Third District   No. 3—86—0120

Opinion filed November 25, 1986.—Rehearing denied January 14, 1987.

Pedderson, Menzimer, Conde, Stoner & Killoren, of Rockford (Dale F. Conde, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Donald R. Jackson, of Jackson, Mitchell & Collier, of Peoria (Roma Jones Stewart, Solicitor General, of Chicago, and Glenn H. Collier, of counsel), for appellees.

JUSTICE HEIPLE delivered the opinion of the court:

Heeren Company (Heeren) appeals from an order of the circuit court of Peoria County affirming a decision of the Illinois Human Rights Commission (HRC) in favor of Mary Malley, a former Heeren employee who was fired after she filed a complaint alleging Heeren violated her civil rights. On appeal Heeren's primary contentions are: (1) that the HRC erroneously determined that Malley was a victim of retaliatory discharge; and (2) that any obligation Heeren had to pay Malley's back wages and attorney fees was tolled when Malley rejected its offer of reinstatement with full back pay, seniority, and training opportunities. We reverse.

Malley was hired by Heeren in 1978 and was the sole full-time employee in the Peoria office, as Heeren's main office is located in Moline. On March 26, 1981, Malley filed a charge with the Department of Human Rights (Department) and the Equal Employment Opportunity Commission alleging age and sex discrimination. She claimed she was denied training and promotion opportunities which were made available to a younger man. Heeren received notice of the discrimination charge on April 3, 1981. On April 10, 1981, Malley was notified by Heeren's president, Randy Koser, that she was discharged effective April 30, 1981. Malley testified that when she asked why she was being terminated, Koser stated that she was being fired for the letter she sent to Chicago. The only letter Malley sent to Chicago during this period was the discrimination charge submitted to the Department through her attorney. After Malley informed her husband of her termination later that day, he called the Peoria office to speak with Koser, who, according to Malley's husband, again stated that she was fired because of a derogatory letter that was sent to Heeren. Heeren's representative, Richard Dailing, testified that the decision to terminate Malley was made prior to the time Heeren received notice of the discrimination charge and was based on her deficient job performance. He claimed Malley did not cooperate with the home office, failed to follow certain office procedures, and exceeded her scope of authority. Most of these alleged deficiencies were raised for the first time at the administrative hearing and were not corroborated by the presence of memos or warnings in Malley's personnel file.

Deborah Crockett, an investigator from the Department assigned to Malley's case, recommended to Heeren that it offer to reinstate

Malley to her former position with back pay and seniority. Based on this recommendation, Heeren submitted a settlement offer to Malley through Crockett on May 29, 1981. The terms of the offer included the following: reinstatement at her former salary with full back pay, provided Malley returned any funds received from the unemployment office; the opportunity to participate in Heeren's management-training program on the same conditions as all other program participants, with Heeren paying all travel expenses to the classes in Moline; and eligibility for promotion to any available management position upon successful completion of the training program. Finally, the terms of Heeren's offer required Malley to release all claims against Heeren arising out of matters charged in the complaint and as a result of her discharge.

Crockett, who recommended at least some of the terms of offer, voiced no objections to any of Heeren's terms and requested no modification of the offer before submitting it to Malley.

Malley refused to accept the offer. She did not complain about the offer of back pay, seniority, or training and promotion opportunities. She sought no additional terms from Heeren. However, Malley apparently desired a salary increase which Heeren was unwilling to pay. No further negotiations among the parties took place after Malley rejected Heeren's offer. Malley has been unemployed since April 30, 1981.

Several months after Malley refused the offer, the Department dismissed her charge of age and sex discrimination, finding it was not supported by substantial evidence.

On June 10, 1981, Malley filed a second charge with the Department of Human Rights, this time alleging Heeren discharged her in retaliation for filing the original age- and sex-discrimination charge. Although the Department was required to serve the respondent with a copy of the charge within 10 days of the date on which the charge was filed (Ill. Rev. Stat. 1981, ch. 68, par. 7—102(B)), Heeren did not receive notice of this charge until April 8, 1982. The retaliatory-discharge complaint requested that Heeren be ordered to reinstate Malley to her former position with back pay and seniority and pay her court costs and attorney fees. In its complaint, the Department also requested a cease and desist order to prevent Heeren from retaliating against persons who reasonably oppose what they believe to be unlawful discrimination.

On September 22, 1982, a hearing on the retaliatory-discharge complaint was held before Judge Gerl, an administrative law judge (ALJ) appointed by the HRC. In his interim recommended order of

April 21, 1983, the ALJ determined that Malley was terminated in retaliation for filing her charge of discrimination and recommended all the relief sought by the Department. After the ALJ entered his recommended order and decision, Heeren filed a request to present additional evidence, the testimony of Heeren's two main officers who had not attended the hearing. The HRC panel which reviewed the recommended order determined that Heeren's officers were aware of the importance of the administrative hearing, but chose to attend to some other business activity at that time, so justice did not require giving them another opportunity to testify. On January 12, 1984, the panel unanimously affirmed the ALJ's order and decision in Malley's favor. Heeren was ordered to reinstate Malley with back wages and seniority statues, to cease and desist from retaliating against those who reasonably oppose what they believe to be unlawful discrimination, and to pay approximately $7,000 in attorney fees and costs, all of which Malley incurred after she rejected Heeren's offer.

Heeren subsequently petitioned for rehearing before the entire Human Rights Commission, but the HRC determined that the matter was not appropriate for rehearing. Following a hearing on Heeren's complaint for administrative review, the trial court affirmed the decision of the Human Rights Commission. This appeal followed.

Several issues were raised on appeal. First, Heeren argues that the HRC incorrectly determined that the nondiscriminatory reasons it gave for dismissing Malley were a pretext for discrimination and that Malley was fired in retaliation for filing a civil rights violation charge. We disagree.

A reviewing court should not overturn a decision of the HRC unless that decision is contrary to the manifest weight of the evidence. (*K mart Corp. v. Human Rights Com.* (1984), 129 Ill. App. 3d 842.) When a complainant makes out a *prima facie* case of discrimination and the employer articulates a legitimate nondiscriminatory reason for its action, the burden is then on the complainant to prove that the employer intentionally discriminated against the complainant. *Burnham City Hospital v. Human Rights Com.* (1984), 126 Ill. App. 3d 999.

Malley filed a charge with the Department of Human Rights on March 26, 1981, and was discharged just one week after Heeren received notice of the charge. The extremely short period of time that elapsed between the filing of the charge and Malley's termination, when considered with the Malleys' testimony about conversations with the president of Heeren regarding his reasons for firing Malley, established a *prima facie* case of retaliation. The burden then shifted to

Heeren to articulate a legitimate business reason for its action.

Heeren met this burden. The testimony indicated that Malley's job performance was deficient and that Heeren executives had planned to discharge her. Heeren's representative testified that Heeren had received complaints about Malley's performance from customers, that Malley failed to follow office procedures, and that she circumvented decisions of her immediate supervisor and presented problems to others outside the chain of command.

■ With evidence of legitimate business reasons for Heeren's action, the burden shifted to Malley to prove intentional discrimination by Heeren. The Malleys testified that the president of Heeren admitted to them that a motivating factor for his decision to terminate the complainant was her filing of a discrimination charge. This testimony was unrebutted by Heeren. Further, the majority of the alleged deficiencies in Malley's employment performance were never documented or presented to her, but were raised for the first time at the administrative hearing. Therefore, we necessarily conclude that the HRC panel's finding that Heeren's nondiscriminatory reasons for discharging Malley were a pretext for discrimination is supported by the record and is not against the manifest weight of the evidence.

■ Heeren next complains that because the Department of Human Rights failed to comply with the statutory notice requirement (Ill. Rev. Stat. 1981, ch. 68, par. 7—102(B)), Heeren was unaware of the retaliatory-discharge complaint until several months after Malley filed the charge, so it was deprived of the opportunity to make further conciliatory efforts during that time. Heeren failed to raise this argument during the administrative proceedings below and therefore waived the issue.

■ Heeren alleges that the ALJ abused his discretion in denying Heeren's request for a continuance. Heeren apparently made a request for a continuance in a telephone conversation with the ALJ a few days before the hearing, after Heeren became aware that its two main officers would be unable to attend. Although the continuance was not granted, Heeren did not renew its motion in writing or orally at the beginning of the hearing, nor did it raise the issue in its post-hearing brief. Thus, there is no evidence in the record of a request or denial of a continuance on Heeren's behalf. Without support in the record, we are unable to determine whether a continuance was improperly denied, and we would decline to decide the issue since it too was improperly raised for the first time on appeal.

Additionally, we reject Heeren's contention that the HRC panel erred when it refused to allow the presentation of additional evidence.

We also find no error in the HRC's denial of Heeren's petition for rehearing before the entire Human Rights Commission. Pretrial discovery was available to both parties, and Heeren was afforded the opportunity to fully present its case during the scheduled hearing, the date of which the parties knew well in advance. Based on our review of the record, we find that neither of the decisions represents an abuse of discretion.

■ Finally, Heeren contends that Malley's refusal to accept the May 29, 1981, offer of reinstatement was unreasonable and constituted a failure to mitigate her damages. With this we agree.

Heeren made its offer during the pendency of Malley's first charge of age and sex discrimination, and acting on the recommendation of the Department of Human Rights investigator, Heeren tailored the terms of its offer to respond to the allegations of Malley's complaints. Malley claimed she had been denied equal training and promotion opportunities, so Heeren offered Malley the opportunity to participate in a management-training program on the same terms as other Heeren employees. Heeren also stated that Malley would be eligible for promotion to any available management position after she successfully completed the training program. These concessions were given in addition to Heeren's offer of reinstatement with full back pay and seniority. Thus, the offer would have made Malley economically whole and provided all the relief she initially sought from Heeren.

Malley and the HRC now contend that Malley was not obligated to accept Heeren's offer because it was conditional. They argue that Heeren was requiring Malley to relocate to receive training. They further note that the offer did not provide for attorney fees or an agreement not to violate her rights in the future and that Malley was required to forego pursuit of any claims against Heeren arising out of the alleged discrimination or her discharge. In support of their contentions, Malley and the HRC cite *Ford Motor Co. v. EEOC* (1982), 458 U.S. 219, 73 L. Ed. 2d 721, 102 S. Ct. 3057. In *Ford* the Supreme Court held that an employer charged with unlawful discrimination under Title VII can toll liability for back wages by unconditionally offering the claimant the job he sought, thereby providing him with the opportunity to mitigate his damages. The HRC panel determined *Ford* was inapplicable to the instant case because Ford made unconditional offers of reinstatement during the pendency of litigation, while the offer to Malley was an offer to settle. We believe Heeren's offer was unconditional, not merely an offer to settle, and note further that *Ford* had not yet been decided when Heeren made its offer on May 29, 1981, so the case cannot control this issue. We,

therefore, reject the contentions of Malley and the HRC that the offer contained conditions which necessarily made it unacceptable either in fact or in law.

The terms of Heeren's offer were plainly reasonable. Malley's rejection was not. Heeren's provision of the training opportunity was a concession to Malley and responded directly to her initial charge of discrimination. It shows a good faith effort on Heeren's part to correct any damage its actions may have caused and to prevent the reoccurrence of similar problems. Heeren's willingness to allow Malley to participate in the training program on the same terms as other Heeren employees cannot now be categorized as an onerous condition which made Heeren's offer unacceptable.

Malley argues, and the HRC panel determined, that Heeren's offer was not satisfactory because it did not provide for attorney fees or a cease and desist order. We disagree. We find it significant that neither type of relief was requested until April 1982 when the Department filed the second complaint claiming retaliatory discharge. Thus, when Heeren communicated its offer to Malley on May 29, 1981, Malley was assured all the relief she had sought up to that point. The requests for attorney fees and the cease and desist order were conjured up long after Malley refused Heeren's offer. Prior to April of 1982, neither Malley, her attorney, nor the Department investigator assigned to the case even hinted to Heeren that its offer was unacceptable or unreasonable because it failed to provide this relief. In short, she never asked for this relief nor did she specify any reason whatever for rejecting the offer. Furthermore, we find it equally significant that the only attorney fees which Malley sought pursuant to the ALJ's recommended order were those incurred after Heeren made the offer to Malley. Had Malley accepted Heeren's offer, she would have incurred none of the claimed attorney fees and would have been afforded all the relief to which she was entitled. Heeren cannot be made to pay these unnecessarily accrued fees and costs.

Malley also contends that Heeren's offer was conditional, hence unacceptable, because it required her to agree not to pursue any claims against Heeren arising out of the discrimination charge or her discharge. After a thorough examination of the record and the parties' briefs, it is clearly apparent that Heeren's offer was unconditional. Heeren's offer provided as much if not more relief than Malley requested and was entitled to receive from Heeren in any event. Had she accepted the offer, Malley would have been rendered economically whole and returned to as good a position as she formerly occupied.

It has long been the rule that an unemployed claimant is subject

to a duty to exercise reasonable diligence in minimizing his damages. (See, *e.g., Phelps Dodge Corp. v. NLRB* (1941), 313 U.S. 177, 85 L. Ed. 1271, 61 S. Ct. 845.) Although a claimant need not accept a demeaning position or enter another line of work, he forfeits his right to back pay if he refuses a job substantially equivalent to his former job. Malley was offered the opportunity to return to her original job, not just a substantially equivalent one. She was offered lost wages, benefits, and training and promotion opportunities. By refusing this offer, Malley failed to mitigate her damages and forfeited her right to receive back pay.

For the foregoing reasons, we reverse.

Reversed.

STOUDER and WOMBACHER, JJ., concur.