WERNER KRITZEN *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. FLENDER CORPORATION, Defendant-Appellant and Cross-Appellee.

Second District   No. 2—90—1281

Opinion filed March 13, 1992.—Rehearing denied April 24, 1992.

542

George W. Keeley, of Halfpenny, Hahn & Roche, of Chicago (Michael T. Reid, of counsel), for appellant.

Gary B. Friedman and Jay R. Giusti, both of Gary B. Friedman, Ltd., of Chicago (Roy P. Olson, of counsel), for appellees.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiffs employees, Werner Kritzen, Ma Phetsisouk, and George Saridis, each brought a retaliatory discharge case against the defendant company, Flender Corporation. The cases were consolidated in the trial court. The jury awarded damages to each plaintiff, and the court denied the bulk of the company's post-trial motion, granting only partial remittitur of Kritzen's and Phetsi-

souk's lost wages awards. The company brought this appeal. The plaintiffs have cross-appealed.

On appeal, the company argues that the court erroneously denied its motions for judgment notwithstanding the verdict and for a new trial. According to the company, the evidence shows that the plaintiffs were discharged pursuant to the company's rule against 26 weeks of absence and that there did not exist evidence either of retaliatory motivation or of willful or wanton action. The company also argues that the court erred in instructing the jury and in barring evidence. Lastly, it argues that the compensatory and punitive damage awards are excessive and require a new trial or remittitur.

On cross-appeal, the plaintiffs challenge the court's treatment of their request to admit. They also question the jury instruction on proper consequences of a finding that the company violated the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 et seq.), prohibition against retaliation, the court's refusal of affidavits, the court's denial of their motion to conform the pleadings to the proof, and the jury instruction that an unconditional offer of re-employment should cut off damages.

The three plaintiffs in this case were all hourly laborers for the company. All apparently were satisfactory employees. Each of them was off work for an extended disability, filed for workers' compensation benefits, and was discharged from employment by the company. Each plaintiff brought his own claim that he had been discharged in retaliation for his workers' compensation filing. The three claims were consolidated for trial.

In response to each of the charges, the company claimed that the discharge was not motivated by retaliation. Rather, according to the company, the three plaintiffs were discharged pursuant to a company policy to terminate any employee who had been absent from work for 26 weeks (the 26-week policy). The policy covered work-related and nonwork-related disabilities equally.

The court determined that the company's 26-week policy did not per se violate Illinois public policy. It submitted the plaintiffs' claims to the jury. The jury returned an award for lost wages; pain, suffering, and emotional distress; and punitive damages for each plaintiff. Thereafter, on the company's motion, the court reduced the lost wages awards to reflect the company's completed payments of temporary total disability benefits to the plaintiffs Kritzen and Phetsisouk. The awards and reductions were as follows:

| | | |
|---|---|---|
| Kritzen: | Lost Wages: | $ 23,858 (jury award) |
| | | 9,315 (judgment) |
| | Pain, Suffering and Emotional Distress: | 10,000 |
| | Punitive Damages: | 150,000 |
| | Sub-total after court deductions | $169,315 |
| Phetsisouk: | Lost Wages: | $178,659 (jury award) |
| | | 167,416 (judgment) |
| | Pain, Suffering and Emotional Distress: | 10,000 |
| | Punitive Damages: | 150,000 |
| | Sub-total after court deductions | $327,416 |
| Saridis: | Lost Wages: | 34,000 |
| | Pain, Suffering and Emotional Distress: | 10,000 |
| | Punitive Damages: | 150,000 |
| | Sub-total after court deductions | $194,000 |
| **GRAND TOTAL JUDGMENT** | | **$690,731** |

Before we consider the merits of this appeal, we first address the plaintiffs' motion to strike portions of the company's statement of facts. The plaintiffs have identified sections of the company's statement of facts and charged that they are without basis in the cited portions of the record or that they are improperly based on excluded evidence. The company argues first that the plaintiffs have waived their specific objections by not raising them in their prior motion to strike. Secondly, the company argues that the plaintiffs' arguments are hypertechnical and related only to uncontested background information. Lastly, the company argues that its statement of facts contains properly presented facts necessary to understand the appeal.

We address the plaintiffs' motion and find certain unsupported elements in the company's brief. (134 Ill. 2d R. 341(e)(6).) However, we find no flagrant violations that hinder our review and will consider the brief while disregarding its inappropriate content. *James v. Shig Yasunaga* (1987), 157 Ill. App. 3d 450, 452.

On the merits, the company first argues that the court erroneously denied its motions for judgment notwithstanding the verdict and for a new trial on the issue of liability. According to the company, there is no evidence of retaliatory motivation and the uncontradicted and unrebutted evidence established that the plaintiffs were terminated pursuant to the company's 26-week policy.

On review, the denial of a motion to grant a new trial will be disturbed only if it was an abuse of discretion; the applicable standard of review asks whether the jury's verdict was against the manifest weight of the evidence. (*Netzel v. United Parcel Service, Inc.* (1989), 181 Ill. App. 3d 808, 812.) Judgment notwithstanding the verdict is properly granted when, evaluating all the evidence in the light most favorable to the nonmoving party, the jury's verdict cannot stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) The evaluation of witnesses and the weighing of testimonies is for the jury, and not the trial court, to do. *Kitsch v. Goode* (1977), 48 Ill. App. 3d 260.

The evidence in this case is voluminous. We will briefly summarize its content. It showed that plaintiff Werner Kritzen, now age 38, was hired as a machinist for the company in October 1985. Kritzen worked until he was disabled by a back injury on August 11, 1986. Thereafter, he remained off work until he was released for duty on October 29, 1986. Kritzen worked on that day but reinjured his back and remained off work thereafter. In mid-December 1986, Kritzen filed and the company received a copy of his workers' compensation claim.

In February 1987, Donald Holdren, then the company's comptroller and personnel manager, calculated Kritzen's absence under the company's 26-week policy and determined that Kritzen's employment should be terminated as of February 10, 1987. After Holdren's suggestion to that effect was reviewed by company attorney D. Tyner Brown, the company sent a termination letter dated February 6 and changed the plaintiff's payroll status to reflect termination on February 10. Holdren testified that he was unaware of Kritzen's workers' compensation claim until he was served with Kritzen's retaliatory discharge complaint.

The company hired plaintiff George Saridis as a machinist in 1982. Prior to 1987, Saridis began to experience allergic reactions connected with his work at the company. After taking a week of vaca-

tion for medical treatment in February 1987, Saridis remained off work for allergy care. Holdren directed the matter to the company's workers' compensation insurer. Early in April 1987, after the company changed a coolant it was using, Saridis returned to work for one full day and one partial day. Thereafter, he was off work because of his allergic condition.

Because Saridis' absence was a particular problem for the company and because Saridis acknowledged that he might never be able to return to work at the company, in April 1987 Holdren asked him if he wanted to resign. Saridis declined. In mid-June 1987, the company received notice that Saridis had filed for workers' compensation benefits. In mid-August 1987, Saridis received notice from the company that he had been terminated; the company's letter referenced a doctor's report and the 26-week policy.

The third plaintiff, Ma Phetsisouk, now age 45, was hired by the company in 1981 and worked on several machines. In May 1987, Phetsisouk injured his back and was absent intermittently from work until August 26, 1987; he did not thereafter return to work for the company. On February 8, 1988, Phetsisouk filed a workers' compensation claim. It was stamped received by the company on February 11. In February 1988, the company's new personnel manager, Margaret Hock, counted Phetsisouk's days off from work, excluding vacation, sick, and short-term disability periods. She calculated February 18, 1988, as Phetsisouk's termination date under the 26-week policy. Phetsisouk received a letter giving notice of that decision on February 18. Hock believed that she had done the calculation several days before that date.

All three of the plaintiffs testified that they were not informed of the existence of the 26-week policy in advance of their termination notices. Questioning covered notices posted on the employee bulletin board, the employee handbook, and direct communication. Mr. Holdren testified that, in September and December 1986, he gave his employees a notice related to new Federal legislation known as CO-BRA. The COBRA legislation addressed an employee's rights for continuing benefits after termination of employment.

Holdren also testified that he had not informed the plaintiffs of the 26-week policy before their termination; according to Holdren, their absence from work was not within their control. Holdren also stated that the company first discussed implementation of a "26-week style" policy at an unrecorded management meeting in January 1986. The policy also was adopted at that meeting. The policy discussion arose after the company became aware of COBRA late in 1985.

Holdren testified that he believed that the COBRA law that took effect in April 1986 mandated that employees be entitled to extend their insurance benefits for a period following termination. Notice of the new law raised questions for Holdren; he said that the company had no termination policy and he wondered how long the company would hold open an employee's job. Holdren had believed that an employee would need to be terminated to qualify for the COBRA benefit. The company's labor lawyer, Tyner Brown, reviewed the 26-week policy and cautioned the company to apply any final policy with consistency.

The 26-week policy was first written by new personnel manager Hock and posted at the end of November 1987. Prior to its writing, Holdren assumed that the policy was being orally communicated through the head of manufacturing, Joachim Torner, whom he expected to tell the factory foreman. Holdren had not specifically instructed Torner to do that communicating, and he had not checked whether communication had been accomplished. Torner testified that he was not aware that it was his responsibility to communicate the policy.

Walter Benecki, who served as the company's president between October 1986 and October 1988, testified that within two months of the start of his job with the company, he met with Holdren and discussed, among other things, the company's unwritten 26-week policy. He advocated an industry-competitive, written policy with a procedure for updating. Benecki testified that the company hired its new personnel manager Hock in May 1987. Among her responsibilities was to set out and update company policies. She reduced the 26-week policy to writing, and Benecki signed it on November 30, 1987.

To establish a claim of retaliatory discharge, a plaintiff must show: (1) that he was the defendant's employee before his injury; (2) that he exercised a right granted by the Workers' Compensation Act; (3) and that he was discharged from his employment with a causal connection to his filing a workers' compensation claim. *Marin v. American Meat Packing Co.* (1990), 204 Ill. App. 3d 302, 307.

In arguing that it was entitled to a new trial or to judgment notwithstanding the verdict, the company first asserts that the plaintiffs failed to establish any causal connection between their workers' compensation filings and their discharges. According to the company, the evidence clearly shows that the plaintiffs were discharged pursuant to the 26-week policy. The company emphasizes that its four witnesses Holdren, Benecki, Brown, and Hock testified to the adoption of a policy to discharge after 26 weeks' absence, and to that policy's uniform application to the plaintiffs, as to all employees on extended disability leave, regardless of whether they had filed for workers' compensation

benefits. It also emphasizes that it adopted the 26-week policy in reliance on the advice and approval of legal counsel. The company notes that its personnel records, payroll change notices, and other internal documents all indicate that the plaintiffs were discharged because they were absent from work for 26 weeks. It also notes that, according to the plaintiffs, no one from the company discouraged their workers' compensation filings.

According to the company, there is no evidence that it applied the policy selectively. Also according to the company, it had no reason to retaliate against employees who filed workers' compensation claims; it was insured to cover workers' compensation benefits to employees. It is inconsistent, according to the company, that it would retaliate against employees' pursuit of workers' compensation benefits that were fully insured while it voluntarily paid uninsured short-term disability benefits to employees who were off work for uninsured, non-work-related disabilities.

The company notes that the trial court found the 26-week policy was not *per se* a violation of Illinois public policy and it concludes that "because the basis for the discharge is valid and nonpretextural [*sic*], the causal connection between the discharge and the filing of Workers' Compensation claim does not exist." It cites the authority of *Slover v. Brown* (1986), 140 Ill. App. 3d 618, which provides that causality does not exist if the basis for discharge is valid and nonpretextual. 140 Ill. App. 3d at 621.

■ After reviewing the full record, we find no merit to the company's arguments. The record may include evidence upon which a verdict and judgment for the company could be upheld. However, the company is incorrect to charge that there is not sufficient evidence to support the jury's verdict here. The company correctly observes that where a witness' testimony is not contradicted by other testimony or by circumstances, is not inherently improbable, and the witness is not impeached, a jury cannot disregard it. (*People ex rel. Brown v. Baker* (1981), 88 Ill. 2d 81, 85.) Nevertheless, here we find sufficient contradictions and circumstances for the jury to have rejected the company's testimony that the 26-week policy was the sole basis for the plaintiffs' discharge. In his case, plaintiff Kritzen filed for workers' compensation benefits in mid-December 1986. He received his termination notice dated February 6, 1987. Plaintiff Saridis' workers' compensation claim was received by the company in mid-June 1987 and he was discharged around the third week of August 1987. Plaintiff Phetsisouk filed for workers' compensation early in February and was terminated in mid-February. In each case, the plaintiff's termination

followed shortly after his application for workers' compensation benefits. Furthermore, despite the company's consistent reference to its reliance on its allegedly nondiscretionary 26-week policy, there was conflicting evidence about the flexibility of application of that policy and about calculations of the plaintiffs' absence periods. For example, Holdren testified that the 26-week policy was strictly objective without consideration for factors such as the employee's physical condition. In contrast, Benecki testified that the dismissals under the 26-week policy were subject to his advance approval and that an employee's subsequent ability to return to work created an exception.

The company's witnesses agreed that the company had developed an oral 26-week policy sometime before the policy was written. Despite the fact that this policy was serious enough to be allegedly a basis for terminating employment and was meant to be consistently enforced, the company offered no documentary evidence of the policy's creation or, except for the statement written in 1987, of its provisions. Furthermore, despite the fact that the company had generally organized informal communication to its workers, for example through weekly foreman meetings, an employee bulletin board, and an employee handbook, and despite the fact that the company had issued employees other information directly related to COBRA provisions, the evidence shows that it did not communicate the 26-week policy, which apparently was derived from COBRA and under which employees could lose their jobs. Furthermore, the management employee who would have been expected to communicate the existence of the policy to workers, Torner, was not aware that he should communicate the policy.

In these cases, the plaintiffs were in regular contact with the company's personnel representative during their extended disability. That communication was under circumstances that made the alleged policy both clearly directly related to the communication and clearly important to the plaintiffs. That importance was clearly true even if the plaintiffs were not in a position to alter their unavailability for work on account of their disability. Even if the plaintiffs could not have made themselves more available for work, an unclear matter, they surely would have been interested to prepare in advance for the financial and other consequences of discharge after 26 weeks. Despite these factors, the company did not communicate the policy in advance to the plaintiffs.

Considering all these factors, we find that the company's consistent representations that the plaintiffs' terminations were motivated solely by the 26-week policy are not determinative. The jury consid-

ered evidence inconsistent with those company representations, and its verdicts finding a retaliatory motivation for all of the terminations were adequately supported by the evidence. Consequently, we find no reason to disturb the court's denial of the company's motions for judgment notwithstanding the verdict or a new trial on the issue of liability.

■ In reaching our conclusion, we also consider the company's argument that the court improperly excluded evidence of plaintiff Saridis' charge filed with the Equal Employment Opportunity Commission (EEOC). The company argues that Saridis' EEOC filing was inconsistent with his retaliatory discharge cause and that it impeached his trial testimony. Saridis' EEOC filing claimed that he had been discharged and subjected to discriminatory treatment solely because of his Greek national origin and his allergic condition handicap. According to the company, these statements were admissible in evidence as admissions and exceptions to the hearsay rule. *Goad v. Evans* (1989), 191 Ill. App. 3d 283, 303.

To be used for impeachment, a witness' prior statement must be materially inconsistent with his trial testimony; the test is whether the statement has a reasonable tendency to discredit the witness' direct testimony on a material matter. (*Keller v. State Farm Insurance Co.* (1989), 180 Ill. App. 3d 539, 551.) Whether to allow the admission of evidence for impeachment purposes is within the trial court's discretion, and the reviewing court will not disturb that decision absent an abuse of discretion. *Thompson v. Abbott Laboratories* (1990), 193 Ill. App. 3d 188, 205.

We are not persuaded by the company's reliance on *Thompson*. In that case, the court merely found that it had not been an abuse of the trial court's discretion to admit the retaliatory discharge plaintiff's EEOC complaints. (193 Ill. App. 3d at 205.) This case, where the trial court ruled against admission, is not parallel, and we find no showing that the evidence was material or that this trial court's conclusion not to admit the comparable evidence was an abuse of discretion.

We also consider the company's argument that the court erred in refusing the following instruction:

"It is not your role to determine whether defendant acted wisely or fairly with respect to the termination of each plaintiff's employment. Put another way, the jury is not to determine whether defendant exercised good business judgment, or whether its policies were sound. You are only to determine whether plaintiff was discharged in retaliation for filing a claim under the Workers' Compensation Act."

According to the company, this instruction was substantially identical to an instruction addressed in *Marin v. American Meat Packing Co.* (1990), 204 Ill. App. 3d 302. In *Marin,* the court found that the retaliatory discharge plaintiff's evidence fell short of showing the necessary causality and, thus, that the jury's verdict finding retaliatory discharge was against the manifest weight of the evidence, so that a new trial was necessary. (204 Ill. App. 3d at 309.) The *Marin* court went on to observe that a review of the instructions given reinforced the need for a new trial. The *Marin* defendant had challenged the court's denial of two instructions. The first one at issue was, as the company asserts, substantially the same as the instruction at issue here; it informed the jury that it should not judge the employer's methods or business judgment in discharging the plaintiff, but should decide merely whether the plaintiff was discharged for exercise of his workers' compensation rights.

Each party has the right to have the jury instructed on its theory of the case, and the circuit court must use its discretion to instruct the jury on all issues which it finds have been raised by the evidence presented. (204 Ill. App. 3d at 310.) As the *Marin* court observed, Supreme Court Rule 239 (134 Ill. 2d R. 239) governs the giving of jury instructions that are not included in the Illinois Pattern Jury Instructions (non-IPI instructions). Under that rule, IPI instructions, and no non-IPI instructions, shall be used unless the court determines that the IPI instructions do not accurately and adequately state the law. (134 Ill. 2d R. 239; *Marin,* 204 Ill. App. 3d at 309-10.) A new trial should be granted where a party shows that its right to a fair trial has been seriously prejudiced by the denial of an instruction. *Thompson v. Abbott Laboratories* (1990), 193 Ill. App. 3d 188, 200.

▆ In this case, the jury was clearly instructed that it was to determine if the plaintiffs had been terminated and proximately damaged in retaliation for filing a workers' compensation claim. The instructions included special interrogatories as follows: "Was the plaintiff discharged in retaliation for filing a claim under the Workers' Compensation Act?" The jury answered that question affirmatively as to each of the plaintiffs.

We find that the totality of the jury instructions made clear that the jury considered retaliatory motivation, not the wisdom of the company's business decisions. Further, we distinguish this case from *Marin* as it, unlike this case, was premised on the reviewing court's finding of insufficient evidence to support the jury verdict of retaliatory discharge. Although the *Marin* court made clear that the failure to instruct was erroneous, it did not find that error was reversible on

its own. Considering the adequacy of the evidence for the verdict and considering the remainder of the instructions, we find no showing of serious prejudice to support an order for a new trial on the matter of liability. *Thompson,* 193 Ill. App. 3d at 200.

The company's second argument on appeal is that the court erroneously denied the company's motion for judgment notwithstanding the verdict and a new trial on the question of punitive damages. According to the company, the evidence does not demonstrate that its conduct approached the required level of outrageousness to permit imposition of punitive damages.

Punitive damages are available only when torts are committed with fraud, actual malice, deliberate violence, or oppression, willfulness, or such gross negligence as to indicate a wanton disregard of others' rights. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186.) Further, the Illinois Appellate Court has held that courts should award punitive damages only if the defendant's misconduct is above and beyond the conduct needed for the basis of the action. *O'Brien v. State Street Bank & Trust Co.* (1980), 82 Ill. App. 3d 83, 87; *Parsons v. Winter* (1986), 142 Ill. App. 3d 354, 361.

The company argues that its conduct here does not approach the required level of outrageousness to permit the imposition of punitive damages. It asserts that there is no evidence that any company representative knew or suspected that either the plaintiffs' discharge or the 26-week policy was improper. The company also relies on the fact that counsel reviewed and approved the legality of its actions.

The plaintiffs note, without presenting a waiver argument, that the company did not present this argument to the trial court. Also, they argue that the supreme court has not created a requirement that punitive damages in the retaliatory discharge case be supported by malice or intent beyond that required for a basic retaliatory discharge judgment. The plaintiffs note that the supreme court has had, but has not taken, the opportunity to state the extra evidence requirement in the retaliatory discharge context.

As the supreme court observed in *Loitz v. Remington Arms Co.* (1990), 138 Ill. 2d 404, 415, "[p]unitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like." The supreme court has also observed that because of their penal nature, punitive damages are not favored in the law, and courts must take caution to see that they are not improperly or unwisely awarded. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 188.) Despite any more specific statement of the supreme court, we find that Illinois law is correctly stated in the *O'Brien* and *Parsons* rule that punitive damages require

proof of misconduct beyond that needed for a basic action. *O'Brien*, 82 Ill. App. 3d at 87; *Parsons*, 142 Ill. App. 3d at 361.

■ In this case, the plaintiffs' recovery was based upon evidence of a causal connection between their filing for workers' compensation benefits and their discharge from employment. However, although we have found that the plaintiffs' evidence was sufficient to demonstrate the company's impermissible conduct, we note that the plaintiffs did not plead any facts to support a finding of willful and wanton misconduct, and we find, construing the evidence to support the plaintiffs, that the evidence was not sufficient for a jury to find the kind of willful and wanton conduct necessary to support an award of punitive damages.

The evidence did not include any showing of "an utter indifference to, or a conscious disregard for a person's right and the law," as the court's jury instruction defined "willful and wanton conduct." Further, much of the evidence was that the company had relied on advice of counsel to create a policy for discharge of any worker who was absent from work for 26 weeks and to discharge each of the plaintiffs. (See *Trans World Airlines, Inc. v. Thurston* (1985), 469 U.S. 111, 129-30, 83 L. Ed. 2d 523, 538-39, 105 S. Ct. 613, 626.) Given the absence of any clear demonstration of conduct beyond that needed to establish basic liability for retaliatory discharge, we find that on the issue of punitive damages, the court should have entered judgment on that issue for the company, notwithstanding the verdict. See *Parsons*, 142 Ill. App. 3d at 361.

The remainder of the company's arguments address the proper calculation of damages. The company's first argument focusing on damages challenges the denial of another of its jury instructions. The first instruction at issue was as follows:

"In assessing damages you may not consider the following factors:

1. The nature or extent of the injury or illness sustained by any plaintiff for which he filed the workers' compensation claim;

2. Any damages sustained by any plaintiff that were the proximate cause of the injury or illness; or

3. The sufficiency of the care or medical treatment provided by defendant, or its workers' compensation insurance carrier, on account of the injury or illness of any plaintiff."

The court also refused the company's alternative to that proposed instruction:

"In assessing damages you may not consider the nature or extent of the injury or illness sustained by any plaintiff for which he filed a workers' compensation claim."

In this argument, as in its previous issues argument, the company relies on *Marin v. American Meat Packing Co.* (1990), 204 Ill. App. 3d 302. In an analysis of the second disputed instruction there, the *Marin* court found that the trial court had erroneously denied the employer's instruction advising the jury not to award the plaintiff damages for any injury received during his employment. (204 Ill. App. 3d at 312.) The *Marin* court rejected the employee's argument that the given damage instruction negated error because it limited damages to the period from the date on which the plaintiff returned to work and was discharged, until the date of the trial. The court observed that the jury had heard the plaintiff's testimony regarding his injury, hospitalization, and any physical therapy, and it found that given that testimony and the circumstances of the plaintiff's separation from the company, the instruction was warranted. 204 Ill. App. 3d at 312.

In this case, the jury was presented a verdict form that itemized compensable damages related to the plaintiffs' discharge claims. Although the jury heard testimony related to the plaintiffs' various injuries and medical treatments, the verdict form did not include any provision related to the nature, extent, duration, or permanency of the plaintiffs' respective physical conditions. Rather, it itemized compensatory damages as (1) lost wages; and (2) pain, suffering, and emotional distress. Further, the jury instructions limited damages to those proximately related to a retaliatory discharge.

The full instruction was as follows:

"If you decide for the plaintiffs on the question of liability, *you must then fix* the amount of money which will reasonably and fairly compensate them for any of the following elements of damage proved by the evidence to have resulted from the wrongful conduct of the defendant:

(1) The value of earnings lost and reasonably certain to be lost in the future.

(2) Emotional pain, suffering, embarrassment, humiliation and distress.

(3) Punitive damages." (Emphasis added.)

■ We find that the instructions on compensatory damages, considered in their entirety, were clear and complete and that the court did not abuse its discretion in deciding that the issue of medical and physical injuries had not been interjected into the case. (See *Ralston v. Plogger* (1985), 132 Ill. App. 3d 90, 98.) We find no basis to con-

clude that the court's denial of the instructions seriously prejudiced the company's right to a fair trial. *Thompson v. Abbott Laboratories* (1990), 193 Ill. App. 3d 188, 200.

■■ The company's second damages argument relates to the afore-mentioned jury instruction itemizing the components of damage awards. According to the company, the instruction improperly included punitive damages in its listing. We need not review the instruction in that regard, as we already have found that the company was entitled to judgment notwithstanding the verdict on punitive damages. We note that the company has not argued, and we do not find any basis to conclude, that any impropriety in the inclusion of punitive damages in the instruction improperly inflated the jury's compensatory damage award. See *Lorenz v. Air Illinois, Inc.* (1988), 168 Ill. App. 3d 1060, 1069.

The company's second objection to the instruction itemizing the elements of damages is that it charges the jury to assess damages for an indefinite period in the future. The company relies on *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, in arguing that the instructions were reversibly erroneous, as the plaintiffs were all permanently employed as of the date of trial and the jury should not have been invited to award lost wages subsequent to that time.

■■ We find no need to directly address the company's argument on the general availability of future wage loss for a retaliatory discharge plaintiff—a question that *Kelsay* did not directly address. In this instruction, the jury was clearly informed that it should award damages for lost wages "proved *** to have resulted from the [the company's] wrongful conduct." Because the instruction limited damages to those proximately connected to the company's retaliatory discharge, effectively separating losses due, rather, to the plaintiffs' infirmities or inability to work or to other causes, and because it appropriately limited recovery to such losses as were reasonably certain to occur (*Robinson v. Greeley & Hansen* (1983), 114 Ill. App. 3d 720, 726), we find no reversible error.

A plaintiff is entitled to recover all damages which naturally flow from the commission of the tort, although he must prove them with reasonable certainty and the damage must be the natural result of the wrong inflicted and not speculative. (*Chicago Title & Trust Co. v. Walsh* (1975), 34 Ill. App. 3d 458, 471.) We are aware of no reason why plaintiffs who prove retaliatory discharge should not be entitled to the same type of proximate monetary damages as are available in other tort actions (*Sloan v. Jasper County Community Unit School District No. 1* (1988), 167 Ill. App. 3d 867, 870), and we find that the

instruction here properly limited damages to those proximately resulting from the company's retaliatory conduct. It is for the trier of fact to determine that proximate amount.

The company's next argument on appeal is that the court improperly relied on the "collateral source rule" to bar evidence of temporary total disability (TTD) workers' compensation payments that had been made to the plaintiffs Kritzen and Phetsisouk. Under the "collateral-source rule," evidence of workers' compensation payments generally is not admissible in an action by an injured employee against a third party. *Principato v. Rudd* (1981), 102 Ill. App. 3d 362, 366.

The company argues that the evidence of its TTD payments should not have been precluded under the "collateral source rule," because it paid the workers' compensation insurance premiums that covered the plaintiffs. It also argues that exclusion of the evidence prejudiced it (1) on the issue of its retaliatory motive; (2) on its defense against the plaintiffs' punitive damage and mental anguish claims; and (3) from establishing that it did not proximately cause wage loss during the time that the plaintiffs were receiving TTD benefits. According to the company, given the plaintiffs' testimony about their financial hardships, the absence of the TTD evidence left the jury with the incorrect impression that the company had left the injured plaintiffs without a means of support.

The application of the "collateral source rule" to which the company has referred us provides that the amount of tort damages a plaintiff can recover is not to be decreased by his related insurance receipts, when the tort-feasor did not contribute to payment of the underlying insurance premiums. (*Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 362.) The company correctly argues that the *Peterson* rule does not support the court's exclusion of TTD evidence in this case where the company did, in fact, pay the workers' compensation insurance premiums underlying the plaintiffs' TTD benefits. Furthermore, we are not persuaded by the plaintiffs' reliance on *Bryntesen v. Carroll Construction Co.* (1963), 27 Ill. 2d 566, or by any other authority we have located, that the TTD evidence was correctly excluded.

This case is unlike *Bryntesen*, a Structural Work Act case, where the court found that the trial court had correctly excluded evidence of the plaintiff's earlier receipt of workers' compensation payments. In that case, the Structural Work Act defendant was not related to the employer to which plaintiff's workers' compensation benefits could be traced. (27 Ill. 2d at 567-68.) Here, unlike in *Bryntesen*, a single party

was both the tort-feasor and the source of the relevant workers' compensation benefits.

■■■ We find no reason to conclude that the improper exclusion of this evidence could have had a prejudicial effect on the question of whether the plaintiffs' discharges were retaliatory. The evidence alluded to the plaintiffs' receipt of workers' compensation benefits and did not leave an impression that the company had stripped the plaintiffs of all support at any time prior to their discharge. Further, our earlier finding rejecting punitive damages makes any discussion of the exclusion's effect on a punitive damage unnecessary.

However, we agree with the company's argument that the exclusion of this evidence may have prejudiced the calculation of pain and suffering or lost wage damages. The absence of clear evidence of the plaintiffs' receipt of workers' compensation payments prior to their discharge may, as the company suggests, have heightened the jury's perception of "psychic" damages proximately related to the company's discharge. Further, we agree with the company that the exclusion of this evidence (1) may have caused the jury to calculate the plaintiffs' lost wages for a period including the time they were employed by the company and receiving TTD benefits; and (2) was not remedied by the court's remittitur giving the company credit for the TTD benefit amounts received by the plaintiffs.

We have found no case that clearly enumerates appropriate damages in this circumstance. However, we agree with the company that any diminution in a plaintiff's earnings directly related to that plaintiff's injury, but not connected to the employer's tortious discharge, is not properly included in a retaliatory discharge award. (*Chicago Title & Trust Co. v. Walsh* (1975), 34 Ill. App. 3d 458, 471.) Thus, if, as the record suggests, the jury's lost wages award included a calculation of full-time wages for the days the plaintiffs were off work and in receipt of TTD benefits, the court's remittitur was inadequate; it would leave intact an award for the differential between TTD payments and the wages the injured worker would have received had he not been injured. That differential amount has no causal connection to the company's tortious conduct and, thus, is not properly awarded. Based on the apparent error here, we find that the cause must be remanded for a retrial of damages.

■■■ In related matters, the company argues, with specific reference to plaintiffs Phetsisouk and Kritzen, that a plaintiff is not entitled to retaliatory discharge damages during the time of his total incapacity to work. With reference to our observations above, we agree that time when an employee is away from work because of his own

infirmity, rather than as a consequence of his employer's tortious conduct, does not qualify for retaliatory discharge damages. Lost wages attributable solely to one's infirmity do not naturally flow from the commission of retaliatory discharge. See *Chicago Title & Trust Co. v. Walsh* (1975), 34 Ill. App. 3d 458, 471.

■■ Similarly, the company argues that plaintiff Phetsisouk's lost wage award should be cut off by the company's unconditional offer of reemployment and either by his acceptance of alternate work from Cap & Seal or, alternatively, by his voluntary resignation from Cap & Seal. Regarding the unconditional offer of reemployment cutoff, the company argues that special interrogatory No. 5, through which the jury found that the company had not unconditionally offered reemployment, must be set aside. Given Phetsisouk's testimony inconsistent with his receipt of such an offer, we find no basis to set aside the jury finding. (See *Merritt v. Greves* (1979), 82 Ill. App. 3d 863, 867.) Consequently, we find no merit to an argument that the claimed unconditional offer cut off entitlement to damages.

■■ Regarding Phetsisouk's employment with Cap & Seal, we again defer to our foregoing analysis that the plaintiffs' lost wage damages are limited to those amounts they would have earned, but for the employer's tortious conduct. Like tort plaintiffs are generally, these plaintiffs were obligated to mitigate their damages. (See *Heeren Co. v. Human Rights Comm'n* (1986), 150 Ill. App. 3d 234, 241-42.) A retaliatory discharge plaintiff can recover the differential between his actual earnings and the earnings he would have had except for his employer's tortious conduct; that amount, clearly, does not extend to wages lost solely as a result of the plaintiff's own infirmity or his own choice to forego appropriate employment. (*Heeren*, 150 Ill. App. 3d at 242; *Chicago Title & Trust Co. v. Walsh* (1975), 34 Ill. App. 3d 458, 471.) Respecting these views, the plaintiffs' recoverable lost wages can be correctly calculated on remand.

The company's remaining argument on appeal is that the court erroneously excluded evidence related to plaintiff Kritzen's separation and dissolution of marriage. According to the company, Kritzen's testimony that his discharge had caused family discord and unhappiness should have been weighed against its evidence that prior to his discharge Kritzen's wife initiated dissolution proceedings based on drunkenness and desertion claims. Without that evidence, according to the company, the jury may have been improperly incited to exaggerate mental suffering and punitive damages. Also, the company argues that the court's order granting the company's motion to exclude testimony that Kritzen's discharge caused his dissolution, but permit-

ting testimony about Kritzen's marital problems, unfairly deprived the company of significant impeachment.

■■■ We agree with the company that the court erroneously refused evidence that plaintiff Kritzen's marital difficulties arose before and independent of discharge by the company. That evidence was clearly relevant to the question of Kritzen's consequential damages, as well as important for impeachment purposes. Without it, the jury may well have been unable to assess Kritzen's statements about how his discharge caused his family life to go "down the drain." The jury also may have been misled to attribute to the company an inappropriately large share of responsibility for Kritzen's marital problems. We find that the court abused its discretion in deciding that the evidence should be excluded. See *Cochran v. Great Atlantic & Pacific Tea Co.* (1990), 203 Ill. App. 3d 935, 937-38.

Because we have concluded that the company is entitled to a retrial, not on the issue of liability but on the issue of proper compensatory damages, we dismiss the plaintiffs' initial arguments on cross-appeal. Those arguments address the plaintiffs' unanswered request to admit, affidavits supporting a pattern and practice by the company, the court's instruction related to a violation of the Workers' Compensation Act, and denial of the plaintiffs' motion to amend the pleadings, and they are subsumed in our affirmance of the company's retaliatory discharge liability.

The plaintiffs' remaining cross-appeal argument is that the trial court improperly gave the following instruction to the jury:

"[A]n employer cuts off any liability that it may have for lost wages by making an unconditional offer of re-employment ***.

If you find that defendant made an unconditional offer of re-employment to one or more plaintiffs, then you must not award any damages for lost wages *** after the date that the offer was made."

The plaintiffs argue that that instruction improperly relied on analysis based on Federal law (see *Ford Motor Co. v. Equal Employment Opportunity Comm'n* (1982), 458 U.S. 219, 73 L. Ed. 2d 721, 102 S. Ct. 3057), when it should have referred to a traditional Illinois tort analysis. According to the plaintiffs, under that tort analysis, a plaintiff's duty to mitigate is determined by reasonableness, so that the plaintiffs were not obligated to accept any unreasonable offer of reemployment. (See *Heeren Co. v. Human Rights Comm'n* (1986), 150 Ill. App. 3d 234, 240-41; *Foster v. Springfield Clinic* (1980), 88 Ill. App. 3d 459, 465.) In response, the company asserts that the plain-

tiffs' case authority is inapposite because it covers efforts to seek alternate employment, not unconditional offers of reemployment.

In this Illinois tort case, we find no reason to abandon relevant Illinois case law for the company's stated reason, or for any other reason. The *Ford Motor Co.* case does not preempt Illinois law, which includes a "reasonableness" element in its analysis of mitigation of damages under comparable circumstances. (150 Ill. App. 3d at 240-41.) Consequently, we find that the given instruction was erroneous. On retrial of damages, the instruction should be amended as appropriate.

Based on the foregoing, we affirm the Kane County circuit court's judgment that the defendant company was liable for retaliatory discharge. We vacate the damage awards and remand with instructions for the trial court to enter judgment for the company, notwithstanding the verdict, on punitive damages and to retry the issue of compensatory damages, with reference to our opinions expressed herein.

Affirmed in part; reversed in part and remanded with instructions.

McLAREN and NICKELS, JJ., concur.