ANITA A. PROFICE, Plaintiff-Appellee, v. BOARD OF REVIEW OF THE ILLINOIS DEPARTMENT OF LABOR, Defendant-Appellant.

First District (3rd Division)   No. 84—2345

Opinion filed July 17, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Thomas P. Marnell, Assistant Attorney General, of Chicago, of counsel), for appellant.

Ron Fritsch, of Chicago, for appellee.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

Plaintiff, Anita A. Profice, had been employed as a bus servicer by the Chicago Transit Authority (CTA) since July 1981. On February 20, 1983, she was dismissed for smoking marijuana on the job in violation of a work rule. She then filed a claim for unemployment compensation, which was denied by the claims adjudicator and referee for the Board of Review of the Illinois Department of Labor, defendant herein. The referee's decision was appealed by plaintiff to defendant which affirmed the decision. Plaintiff then filed a *pro se* complaint for administrative review of defendant's determination in the circuit court of Cook County. (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*) After a hearing, the circuit court reversed defendant's decision. Defendant appeals, contending that the evidence supports its decision that plaintiff was guilty of misconduct on the job, and therefore, was not entitled to unemployment compensation benefits.

The record discloses that plaintiff worked for the CTA as a bus servicer from July 21, 1981, through February 20, 1983, at a final wage of $8.96 per hour. Her work shift began at 11:30 p.m. and ended at 8 a.m. About midnight on February 20, 1983, Mr. Kujall, a pump foreman for the CTA, went to the women's locker room looking for Ms. Allison, a co-employee of plaintiff. On the way to that room he observed plaintiff exiting the door to that location. Looking for Ms. Allison, Kujall knocked on the door. When the door opened, he smelled the aroma of marijuana smoke. Kujall then reported this to Mr. Custley, the supervisor. Kujall also instructed plaintiff and the co-worker to report to his office.

Plaintiff's supervisor testified that he also smelled the odor of marijuana smoke in the women's dressing room and found half a marijuana cigarette and drug paraphernalia on the locker-room bench. He stated that he was familiar with marijuana because he had 12 credit hours of police science. According to Custley, plaintiff and her co-worker denied smoking marijuana but permitted him to search their purses in lieu of being reported to the police. A quantity of marijuana

was found in Ms. Allison's purse. Custley stated that, at that time, plaintiff and Ms. Allison appeared to be unfit for duty and had "glassy eyes." At that point, plaintiff and her co-worker agreed to sign a consent form for a blood test and urinalysis. Plaintiff's urinalysis subsequently tested positive for THC, which is the primary chemical element of marijuana. Custley further stated that only the day manager and the four women employees had keys to the women's locker room.

During the interview of plaintiff and Ms. Allison, plaintiff admitted that she had smoked marijuana, but she denied doing it on the job. When asked whether it was possible that marijuana could have been in her system prior to the start of work, she responded in the affirmative. Plaintiff further contended that "everyone" had access to the women's locker room and that she was forced to submit to the blood test and urinalysis.

Plaintiff's co-worker, Ms. Allison, testified that she and the plaintiff were not smoking marijuana at work. However, the co-worker admitted that the supervisor had found marijuana in her purse.

After hearing this evidence, defendant made the following findings of fact:

"The totality of the evidence established that the claimant [plaintiff] was under the influence of marijuana while at work and on duty on her last day of work in violation of employer rules. Her contention that she was forced to submit to a search and to blood and urine analysis is unsupported by the record. The claimant knew, or could reasonably have known that such behavior was detrimental to the employer's interest and would result in her discharge.

Accordingly, we conclude that the claimant was discharged for misconduct connected with the work, and, therefore, was subject to a disqualification of benefits from February 27, 1983 through March 12, 1983 and thereafter until she requalifies under the provisions of Section 602A of the Illinois Unemployment Compensation Act."

As stated above, after a hearing, the trial court reversed defendant's determination that plaintiff was ineligible for unemployment compensation benefits.

Defendant contends on appeal that the evidence supports its decision that plaintiff was guilty of misconduct connected with her work, and accordingly, she is not entitled to unemployment benefits. We agree with this contention.

Section 602A of the Unemployment Insurance Act states as fol-

lows:

"Discharge for misconduct - Felony. A. An individual shall be ineligible for benefits for the week in which he has been discharged for misconduct connected with his work and, thereafter, until he has become reemployed and has had earnings equal to or in excess of his current weekly benefit amount in each of four calendar weeks ***." Ill. Rev. Stat. 1983, ch. 48, par. 432A.

The CTA rule, in question, prohibits the use or possession of intoxicating liquor or narcotics of any kind from the time an employee reports to work until the conclusion of the employee's workday. The rule also prohibits an employee from reporting to work in an impaired condition due to the use of alcohol or narcotics.

■■ It is well settled in Illinois that the findings and conclusions of an administrative agency on questions of fact are *prima facie* true and correct. (Ill. Rev. Stat. 1983, ch. 110, par. 3—110.) The function of a court of review is limited, therefore, to ascertaining whether the decision of the administrative agency is against the manifest weight of the evidence. (*Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 471, 269 N.E.2d 713.) Where it appears that there is evidence to support the findings of the administrative agency, its decision should be affirmed. *Fenyes v. State Employees' Retirement System* (1959), 17 Ill. 2d 106, 111-12, 160 N.E.2d 810.

■ Recently, our supreme court has defined "misconduct connected with *** work" which would disqualify a claimant from receiving unemployment benefits. (See *Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 475 N.E.2d 879.) The court quoted *Boynton Cab Co. v Neubeck* (1941), 237 Wis. 249, 259-60, 296 N.W. 636, 640:

" '[T]he intended meaning of the term "misconduct" *** is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.' " (105 Ill. 2d 501, 511-12.)

The court further stated:

"Every violation of a company rule will not constitute misconduct. The rule must be a reasonable rule governing the conduct or performance of an employee. There must be some

nexus between the rule and the employment. \*\*\* Thus a reasonable company rule or order governing the conduct and performance of an employee which directly concerns the employment constitutes 'standards of behavior which the employer has the right to expect of his employees,' as that phrase is used in the definition of misconduct quoted above. In addition to the existence of such a rule, it must be shown that the breach of the rule is deliberate or its equivalent, as stated in the above-quoted definition." (105 Ill. 2d 501, 512-13.)

In outlining this definition of misconduct, our supreme court specifically rejected the argument that, in order to establish misconduct under section 602A, it is necessary to show that the conduct, in question, harmed or potentially harmed the employer.

In the present case, it was established that plaintiff had THC in her system. She had previously been in a room accompanied by a co-employee who had marijuana in her purse, and where the strong odor of marijuana smoke was present. Moreover, a partially smoked marijuana cigarette was found in that locker room. We feel that this evidence, if believed by defendant, was sufficient to show by a preponderance of the evidence that plaintiff had used and was under the influence of marijuana while at work in violation of the CTA's rule. In fact, plaintiff admitted to smoking marijuana during nonwork occasions. In addition, plaintiff offered no evidence that she had used marijuana at some specific time before she arrived at work, thereby causing the positive result in her urinalysis. It is evidence, therefore, that plaintiff's denial of the charges was unsupported. Under such circumstances, defendant properly resolved the testimony in favor of the CTA's witnesses. Defendant's conclusion that plaintiff used marijuana and was under its influence during working hours is supported by the manifest weight of the evidence. Accordingly, defendant's decision should have been confirmed.

Furthermore, the above-cited CTA rule as to employee conduct was a reasonable rule governing the conduct or performance of its employees which directly concerned the plaintiff's employment. This rule constituted a standard of behavior which the employer had the right to expect from its employees. Plaintiff points out that she was not a bus driver and therefore could not have possibly harmed her employer or anyone else even if she was under the influence of marijuana while on the job. However, the record on appeal establishes that part of plaintiff's duties included the driving of buses from one location to another within the yard and the fueling of buses. We are of the opinion that the CTA's rule against use of illegal substances

would protect against any employee driving the buses or using flammable liquids while under the influence of drugs or alcohol. Therefore, we must reject plaintiff's contention that, since she was not a bus driver, her behavior was not a danger to the CTA, her co-employees or anyone else. As stated above, the CTA rule, in question, was a reasonable rule governing plaintiff's conduct or performance. The record amply shows that she violated this rule and wilfully disregarded it. Accordingly, she was ineligible for benefits pursuant to section 602A of the Unemployment Insurance Act.

■ Plaintiff also asserts that defendant's decision was not supported by any evidence. However, plaintiff offered only her testimony as a challenge to the credibility of the evidence presented by the CTA. It is evident that defendant chose not to believe her testimony. It is well settled that a difference of opinion concerning the credibility of witnesses or testimony is not sufficient to reverse an administrative decision. (*Keen v Police Board* (1979), 73 Ill. App. 3d 65, 70-71, 391 N.E.2d 190.) Therefore, we must conclude that this contention is also without merit.

For the reasons stated above, the judgment of the circuit court of Cook County is reversed.

Reversed.

McNAMARA and RIZZI, JJ., concur.