RAINTREE HEALTH CARE CENTER, Petitioner, v. THE HUMAN RIGHTS COMMISSION *et al.*, Respondents.

First District (6th Division)   No. 1—94—1643

Opinion filed August 25, 1995.—Rehearing denied September 26, 1995.

RAKOWSKI, J., dissenting.

Levenfeld, Eisenberg, Janger, Glassberg, Samotny & Halper, of Chicago (Judith S. Sherwin and Susan E. Tomaras, of counsel), for petitioner.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Alison E. O'Hara, Assistant Attorney General, of counsel), for respondent Human Rights Commission.

Keefe & Dachis, of Chicago (Robert H. Dachis, of counsel), for respondent James W. Davis.

JUSTICE ZWICK delivered the opinion of the court:

Petitioner, Raintree Health Care Center (Raintree), challenges a final order of the Illinois Human Rights Commission (Commission) which held that Raintree had unlawfully discriminated against respondent, James Davis, by constructively discharging him from his employment based upon his having been diagnosed with the human immunodeficiency virus (HIV).

After an evidentiary hearing before an administrative law judge (ALJ) for the Illinois Department of Human Rights, the following relevant facts were established.

Raintree operates a nursing home facility in Evanston, Illinois. James Davis was hired as a kitchen helper in March 1987, but was fired in June of that year for fighting on the job. Davis was subsequently rehired as a cook in November 1987. After he was rehired, Davis had no further disciplinary incidents. The parties stipulated that Davis performed his job duties in an acceptable manner consistent with Raintree's standards.

Davis' responsibilities as a cook consisted of preparation of the evening meal, placing the food on trays, and cleaning the kitchen and storeroom areas. Davis had no contact with the residents of the facility.

On January 12, 1988, Davis informed his supervisor, Pearl Smith, that he had tested positive for the human immunodeficiency virus (HIV). Davis then met with Smith and with the facility administrator, Burton Behr, who examined the rules and regulations governing the facility but found nothing that addressed the situation of an HIV-

positive employee. Behr made several telephone calls to the Illinois Department of Public Health and to the Evanston board of health, but he was unable to get an opinion as to whether Davis' condition made him ineligible to work in a nursing home. Behr advised Davis that Raintree needed more information from public health officials to determine whether Davis could continue his employment. Behr also told Davis to obtain a note from his doctor indicating that he was either free of communicable disease or that he was allowed to work with the HIV virus. Davis was then sent home before the end of his shift.

Thereafter, Davis obtained a note from his doctor and submitted it to Raintree. This note, which was signed by Davis' doctor, stated as follows:

"To Whom It May Concern:

Mr. James Davis HIV status does not restrict him from performing his current job as a cook in a nursing home. The HIV (Aids Virus) is NOT transmitted through the preparation or serving of food and beverages. Transmission is through blood and body fluids. Should Mr. Davis cut himself in the course of the food preparation, that food should be discarded the same as if any employee had bled into food. Should you have any further questions, please contact the nurse with the clinic, Kathy Pietschmann, R.N., M.S. at 943-6600 ext. 401.

Sincerely,

(Signed) TOM SKOUTELIS

Tom Skoutelis, M.D."

Upon receiving this note, Behr again telephoned the Illinois Department of Public Health and the Evanston board of health, but he never obtained an official opinion as to Davis' ability to continue his employment. Behr refused to allow Davis to return to work.

While Behr sought an official opinion regarding the impact of Davis' condition upon his employment, Davis telephoned the facility on numerous occasions and inquired when he would be permitted to return to work. Each time he called, Davis was told that Raintree had not yet received an answer from public health officials.

On or about February 1, 1988, Davis' brother, who also worked as a cook at Raintree, informed Davis that he had been fired. Davis believed what his brother told him because he had not heard from anyone at Raintree for over three weeks. Davis did not call Raintree or seek confirmation that he had been fired.

In February 1988, Davis filed a discrimination charge with the Illinois Department of Human Rights and applied for unemployment benefits. Although Raintree contested the unemployment claim by

asserting that it had never terminated Davis' employment, Davis was never permitted to return to his position at the Evanston facility.

Thereafter, Davis commenced a two-year job search that culminated in his getting a job providing security at the airport. During that period, Davis' job search consisted of looking through the job advertisements in newspapers on a daily basis, visiting an employment office, going to a job fair at Truman College, and applying to various companies, including fast-food restaurants, discount stores, grocery stores, a tool and dye company, gas stations, taxi cab companies, delivery service companies, and janitorial service companies. Davis testified that he applied for 5 to 10 positions per month. To earn money during this time, Davis performed odd jobs and ran errands for friends and family.

On January 5, 1989, the Illinois Department of Human Rights filed a complaint of civil rights violation after an investigation of Davis' discrimination charge. On February 14, 1989, Raintree filed an answer to the complaint denying that it had discriminated against Davis. In February 1989, Raintree offered Davis another position for comparable pay at a similar facility located in Highland Park, Illinois, approximately 47 miles from Davis' home. Davis refused this offer because the facility was too far away for him to commute using public transportation.

The parties appeared for a hearing before the ALJ on February 24, 1992. Upon consideration of the evidence presented, the ALJ issued a determination on October 9, 1992. In his determination, the ALJ found that Raintree had constructively discharged Davis and had discriminated against him on the basis of Davis' HIV-positive status, a physical handicap. The ALJ recommended that Davis be reinstated to his former position or to a substantially equivalent position with comparable pay and benefits and that Davis be awarded $21,167.50 in back pay and interest, plus reasonable attorney fees and costs.

On October 28, 1992, Davis filed a petition for attorney fees and costs in the amount of $42,909.98. This petition was supported by the affidavits of his counsel and by a billing worksheet. Davis also requested a multiplier in the amount of 50%. Raintree filed a motion for discovery and depositions regarding the reasonableness of the attorney fees on November 13, 1992. Davis filed an objection to that motion on December 16, 1992, and Raintree filed a reply on December 21, 1992. After a hearing on Raintree's motion, the ALJ denied the request for discovery on December 23, 1992, and allowed Davis to amend his fee petition to include time spent responding to Raintree's discovery motion. Davis reported an additional $1,212.50 in fees.

Raintree responded to Davis' petition for fees and costs on January 21, 1993. The response was supported in part by an affidavit of a computer consultant who attested that he was familiar with the computerized billing program used by Davis' counsel. Davis filed a reply on March 4, 1993, and requested an additional $2,966.25 in attorney fees and costs.

On July 8, 1993, the ALJ issued his recommended order and decision in which he denied Davis' request for a fee multiplier of 50% and reduced the hourly rate requested for one of Davis' attorneys from $150 to $125 per hour. The ALJ also reduced the hourly rate requested for another attorney from $150 to $90 per hour. The ALJ rejected Raintree's challenges to the number of hours billed and the costs requested. Upon adjusting the hourly fees of Davis' attorneys, the ALJ awarded Davis $28,956.50 in attorney fees.

Raintree filed exceptions to the ALJ's recommendations and requested that the Commission hear oral argument on the matter. The Commission granted the request and scheduled oral argument to be heard on October 13, 1993. On August 31, 1993, Davis filed his response to Raintree's exceptions.

On April 15, 1994, the Commission issued its order and decision. In its decision, the Commission adopted the recommended decision of the ALJ and rejected the exceptions filed by Raintree. The Commission determined that there was sufficient evidence in the record to support the ALJ's conclusion that Raintree violated the Illinois Human Rights Act (Act) (775 ILCS 5/1—101 et seq. (West 1994)). The Commission also affirmed the award of attorney fees and costs, and rejected Raintree's claim that Davis had failed to mitigate his damages. Raintree appeals.

The decision of an administrative agency will not be overturned on review unless it is contrary to the manifest weight of the evidence. (Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n (1981), 85 Ill. 2d 547, 550, 426 N.E.2d 885.) A decision is contrary to the manifest weight of the evidence only when, after viewing the evidence in the light most favorable to the agency, the court determines that no rational trier of fact could have agreed with the agency's decision. (Agans v. Edgar (1986), 142 Ill. App. 3d 1087, 1093-94, 492 N.E.2d 929.) The decision must be upheld where the record includes competent evidence to support it (Profice v. Board of Review of the Illinois Department of Labor (1985), 135 Ill. App. 3d 254, 257, 481 N.E.2d 1229), and a court of review may neither reweigh the evidence nor substitute its judgment for that of the trier of fact (Murdy v. Edgar (1984), 103 Ill. 2d 384, 391, 469 N.E.2d 1085; Gilliland v. Board of Education of Pleasant View Consolidated School

*District No. 622* (1977), 67 Ill. 2d 143, 153, 365 N.E.2d 322). The findings of fact of an administrative agency on questions of fact are held to be *prima facie* true and correct. *Department of Mental Health & Developmental Disabilities*, 85 Ill. 2d at 550.

Raintree challenges the Commission's finding of unlawful discrimination, asserting that it was against the manifest weight of the evidence.

■ The Human Rights Act specifically prohibits discrimination in employment on the basis of a physical handicap. (775 ILCS 5/1—102(A) (West 1994).) A "handicap" is defined as including a determinable physical characteristic resulting from a disease that is unrelated to the person's ability to perform his job duties. (775 ILCS 5/1—103(I)(1) (West 1994).) Under the Act, an employer commits a civil rights violation when it acts against an employee on the basis of unlawful discrimination. 775 ILCS 5/2—102(a) (West 1994).

■ The United States Supreme Court has set forth a three-part analysis involving the allocation of the burden of proof in cases dealing with claims of employment discrimination brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.* (1988)). (See *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817; *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089.) This approach was adopted by the Illinois Supreme Court in analyzing claims of employment discrimination brought under the Illinois Human Rights Act. *Zaderaka v. Illinois Human Rights Comm'n* (1989), 131 Ill. 2d 172, 178-79, 545 N.E.2d 684.

First, plaintiff must establish by a preponderance of the evidence a *prima facie* case of unlawful discrimination. If he does so, a rebuttable presumption arises that the employer unlawfully discriminated. To rebut this presumption, the employer must articulate, but need not prove, a legitimate and nondiscriminatory reason for its employment decision. If the employer carries its burden of production, the presumption of discrimination falls, and the plaintiff must then prove by a preponderance of the evidence that the employer's articulated reason was not the true reason, but was instead a pretext for unlawful discrimination. *Burdine*, 450 U.S. at 259-60, 67 L. Ed. 2d at 219, 101 S. Ct. at 1097; *Zaderaka*, 131 Ill. 2d at 178-79.

■ To establish a *prima facie* case of discrimination, the complainant must prove that (1) he is handicapped and, as such, is a member of the class protected by the Act, (2) his handicap is unrelated to his ability to perform the functions of the job he was hired to perform, and (3) an adverse employment action was taken against him which was related to his handicap. *Habinka v. Human Rights Comm'n*

(1989), 192 Ill. App. 3d 343, 373, 548 N.E.2d 702; *Acorn Corrugated Box Co. v. Human Rights Comm'n* (1989), 181 Ill. App. 3d 122, 137, 536 N.E.2d 932; *Freeman United Coal Mining Co. v. Human Rights Comm'n* (1988), 173 Ill. App. 3d 965, 973, 527 N.E.2d 1289.

■ Infection with HIV is a determinable physical characteristic resulting from a disease and has been held to be a protected condition or handicap under civil rights laws. See *Doe v. Kohn Nast & Graf, P.C.* (E.D. Pa. 1994), 862 F. Supp. 1310; *Doe v. District of Columbia* (D.D.C. 1992), 796 F. Supp. 559; *Glanz v. Vernick* (D. Mass. 1991), 756 F. Supp. 632; *Benjamin R. v. Orkin Exterminating Co.* (1990), 182 W. Va. 615, 390 S.E.2d 814.

Raintree concedes in its brief that Davis established a *prima facie* case of discrimination in that he was a member of a protected class and an adverse employment action had been taken against him. Raintree argues, however, that it had presented a legitimate nondiscriminatory reason for its termination of Davis' employment and that Davis failed to prove by a preponderance of the evidence that Raintree's proffered explanation for its employment decision was a pretext. In support of this argument, Raintree asserts that its actions were compelled by the statutes and regulations governing nursing homes in the State of Illinois.

■ Raintree relies upon section 300.650(a)(4) of title 77 of the Illinois Administrative Code, which provides that an employee diagnosed or suspected of having a contagious or infectious disease shall not be on duty until such time as a written statement is obtained from a physician that the disease is no longer contagious or is found to be noninfectious. (77 Ill. Adm. Code § 300.650(a)(4) (1985).) Raintree contends that under this section, it was precluded from allowing Davis to continue to perform his duties as a cook. However, section 690.100 specifically listed the conditions which were defined as contagious, infectious, or communicable. This list included Acquired Immunodeficiency Syndrome (AIDS), but did not include HIV infection. It is undisputed that Davis did not suffer from AIDS in January 1988. Consequently, Davis did not suffer from any of the diseases or conditions contained in the clear and unambiguous language of this section. We hold that the Commission properly decided that Raintree's employment action was not justified by the language in this section.

Raintree admitted that its decision with regard to Davis' employment was predicated upon his HIV-positive status. As a result, Davis was not required to come forth with evidence that the reason stated by Raintree was merely a pretext.

■ Because eligibility for employment must be based on individ-

ual capacity, blanket restrictions upon handicapped individuals which are not related to the ability of the particular person to perform the particular work are prohibited. (*City of Belleville v. Human Rights Comm'n* (1988), 167 Ill. App. 3d 834, 840, 522 N.E.2d 268; *Melvin v. City of West Frankfort* (1981), 93 Ill. App. 3d 425, 429, 417 N.E.2d 260.) Thus, an employer is required to make an individualized determination as to the ability of a handicapped person to perform the work before rejecting that person. *Board of Trustees of the University of Illinois v. Human Rights Comm'n* (1985), 138 Ill. App. 3d 71, 75, 485 N.E.2d 33.

■ Employing the analysis and reasoning set forth in *Board of Trustees*, the Commission found that Raintree had failed to make an individualized determination of Davis' ability to do his job without undue harm to himself or to others. This factual finding must be held to be *prima facie* true and correct. (*Department of Mental Health & Developmental Disabilities*, 85 Ill. 2d at 550.) The Commission concluded that Raintree's termination of Davis' employment amounted to a blanket restriction based upon his HIV infection without regard to Davis' ability to perform the work involved. In reaching this conclusion, the Commission observed that Davis had submitted a letter from his doctor which stated that Davis' HIV status did not restrict him from performing his duties as a cook in a nursing home. No contrary medical evidence was presented by Raintree, and Raintree admitted that Davis was precluded from working even though the facility administrator had not received any official opinion regarding Davis' eligibility to work. The Commission noted that it is insufficient for the employer to rely upon a good-faith belief that the employment restriction is justified by a regulation. (See *Board of Trustees*, 138 Ill. App. 3d at 76.) Thus, the Commission correctly determined that Raintree had failed to articulate a legitimate, nondiscriminatory reason for its decision regarding Davis' employment.

We next consider the claim that the Commission's decision should be reversed because the finding that Raintree had constructively discharged Davis was against the manifest weight of the evidence.

■ The Human Rights Act prohibits all "adverse employment actions" taken against an individual which are related to his handicap. (See *Habinka*, 192 Ill. App. 3d at 373.) Constructive discharge occurs when the employer alters the working conditions of an employee to the point where the employee had effectively been fired and compelled to leave. *Motley v. Human Rights Comm'n* (1994), 263 Ill. App. 3d 367, 373, 636 N.E.2d 100.

It is undisputed that Behr compelled Davis to leave the nursing

home before his shift was over on January 12, 1988, and that Davis was never permitted to return to his job at the Evanston facility. Davis never resigned from his position and waited at least three weeks before bringing a discrimination charge and seeking unemployment benefits. Although Raintree never specifically told Davis that he had been fired, Raintree's actions precluded Davis from performing his normal job duties and deprived him of the salary he would have earned. These actions amounted to, at a minimum, a constructive discharge and clearly constituted an adverse employment action. The Commission's decision on this issue was not against the manifest weight of the evidence.

We also agree with the Commission's finding that Davis had mitigated his damages and, therefore, we reject Raintree's claim that this finding was against the manifest weight of the evidence. The record contains ample evidence of Davis' search for work after his employment with Raintree was terminated. In addition, Davis' refusal of Raintree's offer of a position which paid approximately $4.20 per hour at the Highland Park facility was reasonable in light of the fact that Davis did not own a car and would have depended upon public transportation to get to work approximately 47 miles from his home. The Commission also recognized that Raintree presented no evidence as to why Davis could have worked in Raintree's Highland Park facility but not at the Evanston location, except that the other employees at the Evanston facility knew Davis and were aware of his HIV-positive status.

Although Raintree cross-examined Davis in an attempt to cast doubt upon the credibility of his testimony, the ALJ found Davis' testimony to be credible. In addition, because Raintree did not present any evidence of other appropriate jobs for which Davis was qualified, it failed to establish its defense of failure to mitigate damages. (*People ex rel. Bourne v. Johnson* (1965), 32 Ill. 2d 324, 329, 205 N.E.2d 470; *Chas. A. Stevens & Co. v. Human Rights Comm'n* (1990), 196 Ill. App. 3d 748, 756, 554 N.E.2d 976.) Where the record contains competent evidence to support the decision that Davis took reasonable efforts to mitigate his damages, the decision of the Commission must be upheld. See *Profice*, 135 Ill. App. 3d at 257.

Finally, Raintree contends that the award of attorney fees to Davis constituted an abuse of discretion.

It is well established that only those attorney fees which are reasonable will be allowed, and the party requesting fees bears the burden of presenting sufficient evidence from which the trier of fact can render a decision as to their reasonableness. *Harris Trust & Savings Bank v. American National Bank & Trust Co.* (1992), 230 Ill.

App. 3d 591, 595, 594 N.E.2d 1308; *Mars v. Priester* (1990), 205 Ill. App. 3d 1060, 1064, 563 N.E.2d 977; *Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978, 983, 518 N.E.2d 424.

A petition for fees must present detailed records containing facts and computations upon which the charges are predicated and specifying the services provided, by whom they were performed, the time expended and the hourly rate charged. (*Harris Trust & Savings Bank*, 230 Ill. App. 3d at 595; *Kaiser*, 164 Ill. App. 3d at 984.) The determination as to what constitutes reasonable compensation is a matter peculiarly within the discretion of the trier of fact and that determination will not be disturbed on review absent an abuse of discretion. (*Harris Trust & Savings Bank*, 230 Ill. App. 3d at 595; *In re Estate of Healy* (1985), 137 Ill. App. 3d 406, 411, 484 N.E.2d 890.) It is within the province of the trier of fact to determine the reasonableness of the fees requested, and a court of review should not make a *de novo* decision as to the appropriate award of attorney fees. See *Harris Trust & Savings Bank*, 230 Ill. App. 3d at 598-99; *Estate of Healy*, 137 Ill. App. 3d at 411.

Applying these principles to the facts of the instant case, we hold that the Commission did not abuse its discretion in making its award of attorney fees to Davis. Raintree challenged the fee petition brought by Davis' counsel by presenting the affidavit of Anthony Galusa, a computer consultant. In his affidavit, Galusa attested that he was familiar with the computerized billing program used by Davis' counsel and that the time records of Davis' attorneys were not kept contemporaneously with the performance of the professional services. Raintree also claimed that the fees requested were excessive, redundant, and unnecessary.

Each of these arguments was raised in defendants' objection to the fee petition and was considered by the Commission prior to its determination of the appropriate and reasonable fee to be awarded. The record reflects that the ALJ carefully examined the fee petition submitted by Davis' counsel and reduced the hourly rate charged by two attorneys to an amount he deemed appropriate. The Commission adopted the recommended decision of the ALJ which found no indication of duplicative or unnecessary billing entries and found that the number of hours expended by Davis' counsel was appropriate. Upon examination of the fee petition and the evidence presented by Raintree in opposition thereto, we find no abuse of discretion by the Commission. Accordingly, the award of attorney fees in favor of Davis is affirmed.

For the foregoing reasons, the final order of the Human Rights Commission is affirmed.

Affirmed.

McNAMARA, P.J., concurs.

JUSTICE RAKOWSKI, dissenting:

Because I believe the Commission's decision is against the manifest weight of the evidence, I would reverse. The record does not contain any evidence to contradict the testimony of Raintree's administrator, Burton Behr, who, upon being informed of Davis' status, did everything possible to balance the competing interests of the Human Rights Act and section 300.650(a)(4) of title 77 of the Illinois Administrative Code.

It is axiomatic that Raintree's actions must be judged in light of the applicable law in effect and the extent of knowledge regarding HIV infection at the time these facts occurred (January 1988). Section 300.650(a)(4), applicable at the time, provided:

> "An employee diagnosed or suspected of having a contagious or infectious disease shall not be on duty until such time as a written statement is obtained from a physician that the disease is no longer contagious or is found to be noninfectious." 77 Ill. Adm. Code § 300.650(a)(4) (1985).

Dr. Skoutelis' note is at best ambiguous. It does not state that Davis' condition is no longer contagious or found to be noninfectious. In fact it implies to the contrary wherein it states:

> "HIV (Aids Virus) *** [t]ransmission is through blood and body fluids. Should Mr. Davis cut himself in the course of the food preparation, that food should be discarded the same as if any employee had bled into food."

I also note that, unlike the Commission's order and the majority opinion, Dr. Skoutelis' letter does not distinguish between HIV infection and AIDS.

Upon being informed of Davis' HIV status, Behr first contacted Rose Farrell, the Illinois Regional Director for Public Health. When Behr asked whether or not Mr. Davis could continue to work at the facility, the following occurred:

> "THE WITNESS: She wouldn't give me that information. What she had said to me is, 'In the rules and regulations that you have read, it states that if someone has an infectious or contagious disease, they're not allowed to work there.'
>
> I said, 'It doesn't specify HIV.'

And she said, 'Well, those are the rules and regulations. I will check further and get back to you.'

BY MS. SHERWIN:

Q. Did she get back to you that day?

A. No, which is not unusual."

Next, Behr contacted C. Louise Brown, director of the Evanston health department. Behr testified:

"A. *** 'I'm looking for guidance from the people who licensed me.'

Q. Did you ask her [Ms. Brown] if he could continue to work at the facility?

A. I asked her if he could continue to work there.

Q. Did she say that he could?

A. She said that, 'I can't tell you he can't work there, but I can tell you if something should occur because he's working there, then you are subject to the rules and regulations.' And I had said that, 'There are no rules and regulations governing this.'

And then she said, 'You will have to go with the rules and regulations that stand until it can be clarified, so according to what is in the rules and regulations, he is unable to work there at the present time,' and that's the course I took."

Armed with this information (or lack thereof), Behr spoke to Mr. Davis and requested documentation stating that he was free of a communicable disease or that he was allowed to work with the HIV virus. Behr then received the aforementioned letter from Dr. Skoutelis. After reviewing the letter, Behr again contacted C. Louise Brown at the Evanston health department. When Behr read her the letter, she stated "[t]hat is not sufficient and it doesn't say that he is free from infectious or contagious disease." Behr further asked if she had found any additional information regarding this situation, to which she stated "I'm still looking." Behr then called the Illinois Department of Public Health and again spoke to Rose Farrell. Behr read the letter to Ms. Farrell, who did not have any further information and said "[w]e're still checking."

It is upon these facts that the administrative law judge and the Illinois Human Rights Commission found that Raintree was in violation of the Illinois Human Rights Act. In its decision, the Commission stated that "[w]e can sympathize with the respondent's dilemma." Nonetheless, it held that Davis' termination was a violation of the Act.

In my opinion, based upon these facts, the Commission's decision is against the manifest weight of the evidence. While an appellate court is hesitant to reverse a Commission decision on a factual question, we will do so when that decision is clearly contrary to the

manifest weight of the evidence. Nowhere in the Commission's decision are there any articulable facts from which a trier of fact could conclude that Davis' termination was for any reason other than Behr's good-faith belief that Davis' continued employment was in violation of section 300.650(a)(4). See *Le Beau v. Libbey-Owens-Ford Co.* (7th Cir. 1984), 727 F.2d 141; *Le Beau v. Libbey-Owens-Ford Co.* (7th Cir. 1986), 799 F.2d 1152.

Accordingly, I would reverse the decision of the Commission.