NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 220222-U

NO. 4-22-0222

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 22, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| SANDRA ROJAS, LPN, f/k/a SANDRA MENDOZA | ) | Appeal from the |
|     Plaintiff-Appellant and Cross-Appellee, | ) | Circuit Court of |
|     v. | ) | Winnebago County |
| DR. SANDRA MARTELL, in Her Official Capacity as | ) | No. 16L160 |
| Public Health Administrator of the Winnebago County | ) | |
| Health Department; JAMES POWERS, in His Official | ) | |
| Capacity as Chair of the Winnebago County Board of | ) | |
| Health; and WINNEBAGO COUNTY, ILLINOIS, | ) | Honorable |
|     Defendants-Appellees and | ) | Eugene G. Doherty, |
|     Cross-Appellants. | ) | Judge Presiding. |

_____

JUSTICE KNECHT delivered the judgment of the court.
Justices Cavanagh and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the trial court's judgment and dismissed the cross-appeal, concluding (1) plaintiff had not established any error related to the court's finding that she failed to mitigate her damages and (2) defendants' complaint in their cross-appeal was not subject to review given the absence of any error.

¶ 2    In June 2016, plaintiff, Sandra Rojas, f/k/a Sandra Mendoza, filed a complaint against defendants, Dr. Sandra Martell, in her official capacity as public health administrator of the Winnebago County Health Department, James Powers, in his official capacity as chair of the Winnebago County Board of Health, and Winnebago County, Illinois. Relevant to this appeal, plaintiff alleged defendants violated the Health Care Right of Conscience Act (Act) (745 ILCS 70/1 *et seq.* (West 2014)) by discriminating against her after she asserted her religious beliefs

prevented her from providing certain contraception and abortion services as part of her employment. Plaintiff sought treble damages, attorney fees, and costs for defendants' violation of the Act.

¶ 3        Defendants filed an answer to plaintiff's complaint, denying any violation of the Act and asserting affirmative defenses. With respect to their affirmative defenses, defendants alleged any recovery should (1) be reduced because of plaintiff's failure to mitigate her damages and (2) not be trebled because they were a public entity barred from being required to pay punitive damages. The latter affirmative defense was later struck by the trial court on plaintiff's motion.

¶ 4        In January 2021, the trial court, following an appeal which addressed four certified questions (*Rojas v. Martell*, 2020 IL App (2d) 190215, 161 N.E.3d 336), commenced a bench trial. At the conclusion of the trial, the court entered a detailed 14-page memorandum opinion. The court found (1) defendants violated the Act and (2) plaintiff failed to mitigate her damages. As a result, the court awarded plaintiff $2500 as the statutorily required minimum recovery for a violation of the Act (745 ILCS 70/12 (West 2016)), $367,737.33 in attorney fees, and $7890.37 in costs.

¶ 5        Plaintiff now appeals, complaining about the trial court's finding that she failed to mitigate her damages. Defendants cross-appeal, complaining about the court's decision to strike their affirmative defense related to treble damages. As to the latter, defendants acknowledge their complaint is subject to review only if this court first finds error.

¶ 6        For the reasons that follow, we conclude plaintiff has not established any error related to the trial court's finding that she failed to mitigate her damages and, therefore, affirm the court's judgment. We further conclude, as a result of our initial conclusion, defendants' complaint in their cross-appeal is not subject to review and, therefore, we dismiss the cross-appeal.

¶ 7                                I. BACKGROUND

¶ 8        The following is gleaned from the record as it is relevant to the arguments presented in this appeal concerning the trial court's finding that plaintiff failed to mitigate her damages.

¶ 9        At trial, the parties presented evidence showing, in 2014, plaintiff, a Licensed Practical Nurse (LPN) and lifelong resident of Rockford, was employed as a full-time LPN with the Winnebago County Health Department. Plaintiff had worked as an LPN for the Winnebago County Health Department since 1996.

¶ 10        The Winnebago County Health Department operated several health clinics, each of which addressed separate health issues. Plaintiff primarily worked at the clinic that addressed pediatric health issues, but she had also worked at one of the clinics that addressed adult health issues. As an LPN in the clinical setting, plaintiff could administer medications, provide counseling, and provide patient education.

¶ 11        In January 2015, the Winnebago County Health Department began a process to consolidate its various health clinics into a single health clinic. The nurses at the consolidated clinic were cross-trained and expected to address a variety of health issues amongst a broad client population.

¶ 12        Sometime following the commencement of the consolidation of the various health clinics, plaintiff expressed to her supervisors a religious objection to providing certain contraception and abortion services. Plaintiff's supervisors arranged for plaintiff to meet with the public health administrator of the Winnebago County Health Department, Dr. Sandra Martell.

¶ 13        On June 24, 2015, plaintiff met with Dr. Martell to discuss her objection to providing certain contraception and abortion services. Following the conversation, Dr. Martell contacted plaintiff's supervisors and instructed them to temporarily accommodate plaintiff's limitations at the then-consolidated clinic.

¶ 14　　　During the period of temporary accommodation at the consolidated clinic, plaintiff provided immunizations for adults and children, helped with flu clinics, and completed audio and visual screenings for children. Her job responsibilities also included obtaining health histories, obtaining records, accepting client payments, obtaining samples for lab work, and conducting testing and examinations. Plaintiff also acted as an interpreter when called on to do so. While the hours at the health clinics were typically 8 a.m. to 5 p.m., plaintiff testified about not being able to take lunch breaks and staying late, sometimes until 7 p.m., following the consolidation of the health clinics. She also testified about the increased demand at the health clinic, indicating she was so busy that she strained her foot and needed a foot orthosis.

¶ 15　　　Dr. Martell, concluding she could not continue to accommodate plaintiff at the consolidated clinic, began to search, with the assistance of the human resources director of Winnebago County, for "a comparable position to use [plaintiff's] skill level and her credentialing for." Dr. Martell eventually informed plaintiff by letter of her conclusion that plaintiff could not be accommodated at the consolidated clinic. In the letter, Dr. Martell offered plaintiff two alternative positions outside of the clinic. One of the positions was an LPN position at River Bluff Nursing Home, which is a nursing home owned by Winnebago County.

¶ 16　　　The LPN position at the nursing home, a full-time position, involved providing care for residents. It included care planning, delivering medications, and scheduling services. It also included charting in accordance with certain requirements and regulations, wound care, and communicating with the families of residents. On occasion, it required heavy lifting; however, the nursing home had machines which assisted with the lifting. It also occasionally required supporting certified nursing assistants with bathing residents. Those who worked in the nursing home had to deal with residents with dementia, residents dying, and emergency situations. Overall, the nursing

home was described as a fast-paced working environment. There were three shifts at the nursing home, a 7 a.m. to 4 p.m. shift, a 3:30 p.m. to 12 a.m. shift, and a 11:30 p.m. to 7 a.m. shift. In the event someone was needed to work a shift for which they were not hired, the nursing home would seek assistance from volunteers or a contract nurse. On "a rare occasion," a person could be required to fill in on a shift for which they were not hired. The LPN position provided the same, if not higher, salary as the consolidated clinic as well as the same benefits, such as insurance and paid time off. The position allowed for participation in the same county pension as the consolidated clinic. Winnebago County had a "transfer policy" in its handbook that provided any employee who is transferred is subject to a probationary period, a period which serves as an extension of the selection process.

¶ 17 Plaintiff received Dr. Martell's letter on July 14, 2015. She interpreted the letter as telling her that she would lose her job if she did not do the objected-to services at the consolidated clinic. Plaintiff believed the position at the nursing home was not viable because she would be working under her son, who was a registered nurse at the nursing home, because of the county's anti-nepotism policy. Plaintiff also felt she was a pediatric nurse, not a geriatric nurse. Plaintiff did nothing to explore or learn more about the position. Plaintiff was not, in fact, barred from working at the nursing home because of her son's employment there or because of the county's anti-nepotism policy.

¶ 18 On July 16, 2015, plaintiff informed Dr. Martell she would not pursue the position at the nursing home and would submit her two-week letter of resignation. She then submitted a letter of resignation dated July 17, 2015, and effective July 31, 2015. Plaintiff acknowledged she was aware she would have a pension loss at the time of her resignation. She also acknowledged her pension was important to her.

¶ 19            Following her resignation from the consolidated clinic, plaintiff worked at Walter Lawson Children's Home, where she provided care to inpatient mentally and physically handicapped children. The care included administering medications and immunizations and providing tube feedings and nebulizer treatments. She also worked as a private nurse for a disabled child, which included overnight shifts, as well as a home health aide for her mother. As a home health aide, plaintiff would get groceries, do laundry, and clean.

¶ 20            It was stipulated plaintiff lost salary in the amount of $18,767.15 and lost pension benefits in the amount of $213,088.34. It was also stipulated that "[t]he River Bluff position had significantly different responsibilities than [plaintiff's] responsibilities at the Health Clinic."

¶ 21            Based upon the evidence presented at trial, plaintiff argued defendants had not met their burden of proving her failure to mitigate damages. Specifically, plaintiff argued, in relevant part, defendants had not shown the nursing home position was "substantially equivalent" to the position at the consolidated clinic and, therefore, she could not have acted unreasonably in failing to pursue that position. In support of her argument, plaintiff highlighted differences between the two positions related to the (1) client population, (2) nature of the facilities, (3) hours of work, (4) job responsibilities, and (5) status (being subjected to a probationary period).

¶ 22            Defendants, in response, argued they had met their burden of proving plaintiff's failure to mitigate damages. Initially, defendants argued they only needed to show plaintiff failed to reasonably pursue "appropriate" employment, as opposed to "substantially equivalent" employment. Furthermore, defendants, while acknowledging the position at the nursing home had "a handful of less favorable duties and perhaps less desirable hours" than the position at the consolidated clinic, highlighted similarities between the positions related to the (1) salaries, (2) benefits, (3) pensions, (4) employment status (full-time), and (5) qualifications.

- 6 -

¶ 23    In its memorandum opinion, the trial court indicated it had considered "the evidence and the excellent legal arguments of counsel." The court generally noted the dispute "is not so much about the facts, but about the inferences to be drawn from those facts." The court accepted the parties' propositions that plaintiff had to exercise reasonable diligence and ordinary care to minimize her damages and that the burden was on defendants to prove plaintiff failed to act accordingly. Applying the "substantially equivalent" standard requested by plaintiff, the court determined the nursing home position "was substantially equivalent to [p]laintiff's position at the consolidated clinics." In support of that determination, the court highlighted the positions (1) were in the same field, (2) had equivalent salaries, and (3) would preserve the pension benefits. The court acknowledged the position at the nursing home would have required plaintiff to work with a more limited population than the one at the consolidated clinic. After so acknowledging, the court noted plaintiff had worked with a similar institutionalized population while at the children's home. The court also acknowledged plaintiff had cited a case involving an employee's refusal to accept a job offer from the employee's former employer but it found that case both distinguishable and inapplicable. In the end, the court found, "[p]laintiff failed to reasonably mitigate her damages by pursuing a nursing position at the River Bluff nursing home."

¶ 24    This appeal followed.

¶ 25                    II. ANALYSIS

¶ 26    On appeal, plaintiff complains about the trial court's finding that she failed to mitigate her damages. Specifically, plaintiff argues the court's finding is based upon an erroneous determination that the position at the nursing home was substantially equivalent to the position at the consolidated clinic. Plaintiff asserts the court reached its erroneous determination by either applying an incorrect standard or by incorrectly applying the correct standard.

¶ 27     Defendants, in response, argue plaintiff has not established any error related to the trial court's finding that she failed to mitigate her damages. Specifically, defendants argue the court's determination that the position at the nursing home was substantially equivalent to the position at the consolidated clinic was predicated upon an appropriate standard and supported by the evidence of record.

¶ 28                         A. Applicable Standards of Review

¶ 29     At the outset, the parties disagree on the applicable standard of review. Plaintiff argues for the application of the *de novo* standard, while defendants argue for the application of the manifest weight of the evidence standard. We find both standards of review applicable.

¶ 30     The first issue presented in this appeal is whether the trial court applied an incorrect standard in reaching its determination that the position at the nursing home was substantially equivalent to the position at the consolidated clinic. Plaintiff specifically contends the court committed several legal errors, each of which demonstrate the application of an incorrect standard. Determining whether the trial court committed any legal error is a question of law, subject to *de novo* review. See *United States Steel Corp. v. Illinois Pollution Control Board*, 384 Ill. App. 3d 457, 462, 892 N.E.2d 606, 611 (2008).

¶ 31     The second issue presented in this appeal is whether the trial court incorrectly applied the correct standard in reaching its determination that the position at the nursing home was substantially equivalent to the position at the consolidated clinic. Plaintiff specifically contends the court's determination that the positions were substantially equivalent must have been from an incorrect application of the correct standard given the undisputed facts. While several facts are undisputed, the trial court, as the trier of fact in this case, was responsible for evaluating those facts and making reasonable inferences from them and then making the ultimate factual determination

as to whether the two positions were substantially equivalent. Under these circumstances, we find the manifest weight of the evidence standard applicable. See *Holland v. Schwan's Home Service, Inc.*, 2013 IL App (5th) 110560, ¶ 213, 992 N.E.2d 43 ("The [trier of fact's] finding on the issue of whether the plaintiff failed to mitigate damages is reviewed under the manifest weight of the evidence standard."). "A ruling is against the manifest weight of the evidence only if an opposite conclusion is clearly evident." *Indeck Energy Services, Inc. v. DePodesta*, 2021 IL 125733, ¶ 56, 183 N.E.3d 746.

¶ 32                                    B. Undisputed Principles of Law

¶ 33          The parties agree certain principles of law are applicable to a claim brought under the Act. They agree that plaintiff had to exercise reasonable diligence and ordinary care to minimize her damages and that the burden was on defendants to prove plaintiff failed to act accordingly. They also agree that defendants, in order to carry their burden in this case, had to show the position at the nursing home was sufficiently similar to the position at the consolidated clinic, such that plaintiff could be found to have acted unreasonably in failing to pursue that position. Absent any argument to the contrary, we will accept these principles of law to be true and applicable for the purposes of this appeal.

¶ 34          C. Applicable Standard When Evaluating Whether Employment
                           Positions Are Sufficiently Similar

¶ 35          Plaintiff asserts, as she did before the trial court, the "substantially equivalent" standard is applicable when evaluating whether two employment positions are sufficiently similar. See *Heeren Co. v. Illinois Human Rights Comm'n*, 150 Ill. App. 3d 234, 242, 502 N.E.2d 17, 22 (1986) ("Although a claimant need not accept a demeaning position or enter another line of work, he forfeits his right to back pay if he refuses a job substantially equivalent to his former job.").

While defendants emphasize the substantially equivalent standard finds little support in Illinois law and cite other cases applying a purported lesser "appropriate" or "similar" standard, they do not advocate for any particular standard on appeal. See *Reinneck v. Taco Bell Corp.*, 297 Ill. App. 3d 211, 217, 696 N.E.2d 839, 844 (1998) ("A wrongfully discharged employee must attempt to mitigate her damages by seeking similar employment."); *Kritzen v. Flender Corp.*, 226 Ill. App. 3d 541, 560, 589 N.E.2d 909, 923 (1992) ("A retaliatory discharge plaintiff can recover the differential between his actual earnings and the earnings he would have had except for his employer's tortious conduct; that amount, clearly, does not extend to wages lost solely as a result of the plaintiff's own infirmity or his own choice to forego appropriate employment."). Instead, defendants merely point out the preceding and then argue that, even if the substantially equivalent standard is applicable, the trial court correctly applied it. Given the arguments presented and the trial court's application of the substantially equivalent standard, we will, for purposes of this appeal, evaluate whether plaintiff has established any error with respect to the court's application of that standard.

¶ 36                          D. Plaintiff's Contentions of Error

¶ 37            First, plaintiff contends the trial court erred as a matter of law in failing to consider multiple relevant factors when conducting its evaluation of whether the position at the nursing home was substantially equivalent to the position at the consolidated clinic. We disagree. Both parties submitted written argument addressing multiple relevant factors for consideration when evaluating whether the positions were sufficiently similar. The court, in its memorandum opinion, indicated it considered "the excellent legal arguments of counsel." While the court only explicitly addressed a few of the relevant factors in its memorandum opinion, that does not show the court failed to consider other relevant factors in conducting its evaluation of whether the position at the

nursing home was substantially equivalent to the position at the consolidated clinic.

¶ 38        Next, plaintiff contends the trial court erred as a matter of law in comparing the nursing home position to the children's home position. We disagree. The court's analysis makes clear it was aware that it was to consider whether the position at the nursing home was sufficiently similar to the position at the consolidated clinic. When conducting its analysis, the court recognized the position at the nursing home would have required plaintiff to work with a more limited population than the one at the consolidated clinic. After recognizing this difference, the court noted the fact plaintiff had worked with a similar institutionalized population while at the children's home. The court's observation, considered in the context of its entire analysis, does not show any improper comparison. In fact, the court's observation was relevant to the question of whether plaintiff's decision not to pursue the position at the nursing home was reasonable under the circumstances.

¶ 39        Third, plaintiff contends the trial court erred as a matter of law in dismissing the fact the position at the nursing home was conveyed to her by her employer. We disagree. In support of her position, plaintiff, as she did before the trial court, relies on *Schwarze v. Solo Cup Co.*, 112 Ill. App. 3d 632, 445 N.E.2d 872 (1983). In that case, the appellate court found the plaintiff, in order to mitigate his damages, was not required to accept an offer from his original employer that had the same salary but would have breached the original employment contract and constituted a demotion. *Id.* at 639. In this case, there was no employment contract, and the trial court did not find the nursing home position was a demotion but rather a substantially equivalent position. Accordingly, even if the nursing home position was conveyed by plaintiff's original employer, that fact is of no import.

¶ 40        Last, plaintiff contends the trial court's determination that the position at the

nursing home was substantially equivalent to the position at the consolidated clinic must have been from an incorrect application of the correct standard given the undisputed facts. We disagree. The court, in support of its determination, highlighted the two positions (1) were in the same field, (2) had equivalent salaries, and (3) would preserve the pension benefits. The record also shows, although not explicitly highlighted by the court, the two positions had similar benefits, were full-time, had similar LPN qualifications, had some similar responsibilities, and involved caring for patients. Plaintiff on appeal, as she did before the trial court, highlights differences amongst the work hours. The first shift hours at the nursing home, however, are substantially equivalent to the hours at the consolidated clinic. Plaintiff also highlights the Winnebago County policy providing that any employee who is transferred is subject to a probationary period. The probationary period, however, serves as an extension of the selection process and does not otherwise affect plaintiff's employment status. While there are, undisputedly, differences between the two positions related to the job responsibilities, client population, and nature of the facilities, we cannot say the trial court was required to reach the opposite conclusion based upon those differences. The court's ruling is not against the manifest weight of the evidence.

¶ 41     We note plaintiff has cited *Raintree Health Care Center v. Human Rights Comm'n*, 275 Ill. App. 3d 387, 655 N.E.2d 944 (1995), in support of her position before this court. That case is distinguishable. There, the appellate court affirmed a finding of the Human Rights Commission that an employee had mitigated his damages, concluding the commission's finding was not against the manifest weight of the evidence. *Id.* at 395-96. The court, in reaching its conclusion, indicated the employee's refusal to take his employer's offer of an alternate position was reasonable in light of the fact the employee did not own a car and would have depended upon public transportation to get to work, which was approximately 47 miles from his home. *Id.* at 396. Unlike *Raintree Health*

*Care Center*, we are reviewing the trial court's finding that plaintiff failed to mitigate her damages. Moreover, there is no evidence suggesting the position at the nursing home as compared to the position at the consolidated clinic had any impact on plaintiff's commute. *Raintree Health Care Center*, therefore, does not support plaintiff's position.

¶ 42       As a final matter, plaintiff contends the trial court's mitigation analysis contravenes the letter and intent of the Act and renders the Act less protective than Title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e *et seq.* (2012)). We disagree. First, plaintiff's contention, as defendants argue, conflates the issues of liability and damages. Furthermore, the court's mitigation analysis involved, at plaintiff's request and over defendants' objection, the application of a substantially equivalent standard, a standard which has been applied under Title VII. See, *e.g.*, *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990). Nothing about the court's mitigation analysis contravenes the Act or renders the Act less protective than Title VII.

¶ 43       In summary, we conclude plaintiff has not established any error related to the trial court's finding that she failed to mitigate her damages. As a result, we further conclude the complaint in defendants' cross-appeal is not subject to review. We, therefore, find the trial court's judgment is subject to affirmance and the cross-appeal is subject to dismissal.

¶ 44                               III. CONCLUSION

¶ 45       We affirm the trial court's judgment and dismiss the cross-appeal.

¶ 46       Affirmed; cross-appeal dismissed.